In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-3415

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDWARD WOODFORK,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:18-cr-20060 — **Michael M. Mihm**, *Judge.*

———————————

ARGUED APRIL 22, 2021 — DECIDED JUNE 4, 2021

———————————

Before WOOD, BRENNAN, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* In 2018, a state police officer sought and obtained a warrant to search Defendant Edward Woodfork's home based on the officer's orchestration of several controlled-buy drug transactions involving Woodfork. Upon executing the warrant, officers discovered methamphetamine and a firearm at Woodfork's suspected residence. Based on this evidence, a federal grand jury indicted Woodfork for

possession of methamphetamine with intent to distribute and possession of a firearm by a felon.

Woodfork maintains that the officer made material misstatements or omissions in seeking the warrant in violation of *Franks v. Delaware*, 438 U.S. 154 (1978), and that probable cause to issue the search warrant was lacking in the first instance. Accordingly, Woodfork moved the district court to quash the search warrant and to suppress the resulting evidence. When the district court denied the motion, Woodfork pled guilty to both charges but preserved his ability to appeal the district court's denial of his suppression motion.

For the reasons explained below, we affirm the district court's denial of the motion to quash and to suppress.

## I. Background

The government's prosecution of Woodfork arose out of an investigation by the Vermillion (County) Metropolitan Enforcement Group ("VMEG"). As part of the investigation, Danville Police Officer Scott Crawley sought a warrant from a county judge to search the residence that officers believed to be Woodfork's home at 1220 North Franklin Street in Danville, Illinois. Crawley did not submit an affidavit in support of the search warrant request; instead, he testified under oath, live before the judge. The court recorded the testimony.

During his testimony, Crawley identified Edward Woodfork as the target of the requested search warrant. He testified that Woodfork had sold 1.6 grams of crystal methamphetamine in a controlled buy to a confidential source earlier that

day.[1] Prior to the transaction, officers searched the source for currency and contraband and provided the source with $110 of official advanced funds to buy the methamphetamine from Woodfork. Officers surveilled the transaction, and the source wore a wire that recorded the transaction. Officers also searched the source after the transaction. Crawley reported that he had relied on the confidential source "multiple times" in the past and that the source was "reliable."

Crawley also testified that the officers intended to set up a second controlled buy on the day of the hearing. For this transaction, a second reliable confidential source contacted Woodfork to buy crystal methamphetamine. The source attempted to set up the controlled buy with Woodfork away from 1220 North Franklin Street so that officers could stop Woodfork in his car before he arrived at the agreed-upon location for the controlled buy. This "buy bust" maneuver was stymied, however, by Woodfork's insistence that the source come to Woodfork's home for the transaction. Because the source feared retaliation, he did not want the transaction to take place at Woodfork's home. In describing this attempt at a controlled buy, Crawley first testified that Woodfork directed the source to come to "Franklin and English" for the sale, and Crawley testified that law enforcement understood

---

[1] As we have previously recognized:

> The controlled buy is a familiar law enforcement tool. In a typical case, officers enlist a confidential informant to buy drugs from a suspected dealer. To protect against informant deception, officers search the informant before and after the buy and frequently wire him so that they can listen in on the transaction.

*United States v. Bacon*, 991 F.3d 835, 837 (7th Cir. 2021).

this intersection to mean Woodfork's residence at 1220 North Franklin Street. Later in the hearing, the court questioned Crawley further about where the transaction was supposed to take place, and Crawley confirmed Woodfork was directing the buyer to his home at 1220 North Franklin Street.

Crawley further testified that he had "done" three "past buys" from Woodfork within the last year using the same confidential informants. Those three controlled buys were also "wired buys."

Based on this testimony, the judge issued a search warrant for Woodfork's home at 1220 North Franklin Street. Upon executing the warrant, officers discovered methamphetamine and a firearm. The government presented this evidence to a federal grand jury, which indicted Woodfork for possession of a controlled substance with intent to distribute and possession of a firearm by a felon. Woodfork moved to quash the search warrant and in the alternative to suppress the evidence discovered through the warrant-authorized search of his home. He argued that he was entitled to a *Franks* hearing and suppression of the evidence from the search because he claimed that Crawley had misled the warrant-issuing judge regarding the identification of his home as the place to be searched and by omitting details about the confidential sources' criminal histories.

The district court found that Woodfork was not entitled to a *Franks* hearing. First, he "failed to show Crawley made false statements about his address knowingly, intentionally, or with reckless disregard for the truth." *See Franks*, 438 U.S. at 155–56. In addition, the district court found that Woodfork failed to show that "the alleged false statement [about his address] was essential to the establishment of probable cause,

because even without the statement, Crawley's testimony provided the issuing judge with a substantial basis for concluding that probable cause existed [to search 1220 North Franklin Street]." The district court further found that "the omission of information about the sources' backgrounds, criminal histories, or motives does not change the probable cause determination." Finally, the district court held that regardless of probable cause, the good-faith exception announced in *United States v. Leon* would apply. *See* 468 U.S. 897 (1984).

When the district court denied his motion, Woodfork conditionally pled guilty, preserving his ability to challenge the suppression ruling. The district court sentenced Woodfork to two concurrent 120-month sentences and five years' supervised release.

## II. Discussion

On appeal, Woodfork argues that the district court should have held a *Franks* hearing to investigate the veracity of Officer Crawley's testimony in support of the search warrant. Woodfork contends that Crawley made two material omissions or misstatements during his testimony before the county judge that render the search warrant invalid. First, he argues Crawley recklessly or intentionally omitted the confidential sources' criminal histories and other details about their credibility.[2] Second, he asserts that Crawley "invented" the street corner ("Franklin and English") where the controlled buy was supposed to take place, so that it was a

---

[2] In the proceedings below, the government admitted that "the second confidential source does have a criminal history that was not discussed in Agent Crawley's testimony."

material misstatement to suggest that 1220 North Franklin Street was the location where drugs were likely to be found. Woodfork also maintains that the district court erred in applying *Leon*'s good-faith exception, because, he claims that Crawley acted in bad faith. For these reasons, Woodfork seeks to suppress the evidence discovered at 1220 North Franklin Street.

In reviewing a motion to suppress, we review the district court's "legal conclusions *de novo* and factual findings for clear error. Similarly, we review the denial of a *Franks* hearing for clear error, but any legal determinations that factored into the ruling are reviewed *de novo*." *United States v. Hancock*, 844 F.3d 702, 707–08 (7th Cir. 2016) (quoting *United States v. Glover*, 755 F.3d 811, 815 (7th Cir. 2014)). We give "'great deference' to the conclusion of the judge who initially issued the warrant," upholding it "so long as 'there is substantial evidence in the record' that supports the state judge's decision." *United States v. Leonard*, 884 F.3d 730, 733 (7th Cir. 2018) (quoting *United States v. Garcia*, 528 F.3d 481, 485 (7th Cir. 2008); *United States v. Curry*, 538 F.3d 718, 729 (7th Cir. 2008)).

## A. Entitlement to a *Franks* Hearing

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "Probable cause for issuance of a search warrant exists if there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Bacon*, 991 F.3d at 839–40 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The ability of the neutral and detached magistrate to determine probable cause depends on the accuracy of the information the police submit." *United States v. Clark*, 935 F.3d 558, 563 (7th Cir. 2019). "'A search warrant is not valid if the police obtain it by

deliberately or recklessly presenting false, material information,' or by omitting material information from the affidavit provided to the issuing judge." *Id.* (quoting *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013)).

"To obtain a *Franks* hearing, the defendant must make a 'substantial preliminary showing' of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth." *Glover*, 755 F.3d at 820 (citing *McMurtrey*, 704 F.3d at 508); *see also United States v. Bell*, 925 F.3d 362, 372 (7th Cir. 2019) ("[A] defendant is entitled to an evidentiary hearing when he 'makes a substantial preliminary showing that the police procured a warrant to search his property with intentional or reckless misrepresentations in the warrant affidavit and such statements were necessary to a finding of probable cause.'") (quoting *United States v. Kienast*, 907 F.3d 522, 531 (7th Cir. 2018)). "*Franks* hearings are 'rarely held' because '[t]hese elements are hard to prove.'" *United States v. Dessart*, 823 F.3d 395, 402 (7th Cir. 2016) (quoting *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000)).

### 1. Material Falsity or Omission

Here, Crawley's omission of the confidential sources' criminal histories was not "necessary to a finding of probable cause." *Bell*, 925 F.3d at 372. "Our cases do not hold that a *Franks* hearing is required every time some substantial adverse information about an informant's credibility is omitted from a probable cause affidavit." *Clark*, 935 F.3d at 565 (citing *Hancock*, 844 F.3d at 709). In seeking to establish probable cause for the search warrant in his testimony before the judge, Crawley did not simply rely on a tip from a confidential informant who chose to provide information to the police after

an unverified drug transaction. Instead, Crawley relied on information he had gathered through an investigation involving four separate controlled-buy transactions with confidential informants, which law enforcement had orchestrated and surveilled. *See United States v. Glenn*, 966 F.3d 659, 661 (7th Cir. 2020) ("Given the audio and video evidence of the controlled buy, the informant's reliability and motivations are not material to the existence of probable cause."); *United States v. Fifer*, 863 F.3d 759, 764 (7th Cir. 2017) ("The officer who submitted the affidavit credibly reported that he and another officer had recently overseen two controlled buys[.]").

This case is distinguishable from cases in which probable cause depended on the credibility of the source of a single confidential or anonymous tip. *See, e.g.*, *Glover*, 755 F.3d at 814–15, 820 ("[T]he omitted credibility information was clearly material" because probable cause depended on a tip from a gang-affiliated confidential informant with minimal corroboration or detail.); *United States v. Koerth*, 312 F.3d 862, 867 (7th Cir. 2002) (government conceded lack of probable cause in warrant affidavit where the affidavit was based on a tip from a single source). Importantly, Crawley (and the issuing judge) were not simply relying on the uncorroborated word of the confidential sources; law enforcement officers arranged and witnessed the controlled-buy transactions through the wire recordings and surveillance. Indeed, "[w]e have held that 'a controlled buy, when executed properly,' is generally 'a reliable indicator as to the presence of illegal drug activity.'" *Bacon*, 991 F.3d at 837 (quoting *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006)). Here, Officer Crawley had direct knowledge of the controlled buys.

Moreover, Crawley appeared in person to testify before the judge. Unlike the consideration of a written affidavit, the judge had the ability to ask Crawley questions regarding the confidential sources' backgrounds and criminal histories. We trust that warrant-issuing judges are aware that the individuals upon whom law enforcement relies to make drug purchases through controlled buys are likely to have criminal histories, and it is not a stretch to assume that the judge here knew that a confidential source buying methamphetamine likely had some criminal history. *Cf. Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 970 (7th Cir. 2003) ("[C]ourts are aware that informants are frequently facing charges and hoping for deals."). Given Crawley's live testimony, the judge could have probed this issue further had he thought it necessary. As the district court aptly pointed out, "[i]f [the issuing judge] had thought the confidential sources' criminal history or motivations were relevant to his determination of probable cause, he could have asked Crawley to explain."

Thus, we agree with the district court that the "omission of information about the sources' backgrounds, criminal histories, or motives does not change the probable cause determination." *See also United States v. Sims*, 551 F.3d 640, 645 (7th Cir. 2008) (omission of confidential source's arrest record was not material to the probable cause determination). While "we think the[] omissions" of information about the sources' credibility are "unfortunate," those omissions "do not negate probable cause" on these facts. *See Glenn*, 966 F.3d at 661.

## 2. Deliberate or Reckless Disregard for the Truth

Even if Woodfork was able to establish that Crawley made some material omission during the probable cause hearing, Woodfork has failed to make the necessary "substantial

preliminary showing" that Crawley intentionally or reck-lessly misled the warrant-issuing judge. *Bell*, 925 F.3d at 372. "To secure a *Franks* hearing, a defendant must put forth 'an offer of proof' that is 'more than conclusory' and gestures to-ward more than negligent mistakes." *United States v. Daniels*, 906 F.3d 673, 677 (7th Cir. 2018) (per curiam) (quoting *Franks*, 438 U.S. at 171). "What is needed is 'direct evidence of the af-fiant's state of mind' or else 'circumstantial evidence' of 'a subjective intent to deceive.'" *Id.* (quoting *Glover*, 755 F.3d at 820). To make the necessary preliminary showing, "the evi-dence must show that the officer submitting the complaint perjured himself or acted recklessly because he seriously doubted or had obvious reason to doubt the truth of the alle-gations." *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) (citing *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000); *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984)).

Here, Woodfork has made no such showing. First, Wood-fork's frustration that Crawley did not testify about the confi-dential sources' criminal histories does not show that Crawley omitted that information to intentionally mislead the judge. At most, Crawley was negligent in failing to testify about the sources' criminal histories, but "negligence does not justify a *Franks* hearing." *United States v. Slizewski*, 809 F.3d 382, 385 (7th Cir. 2016). And as we explained above, the issuing judge could have asked questions about the sources' criminal histo-ries had he thought it necessary. Given that the issuing judge was apparently satisfied by Crawley's testimony that his sources were reliable, Crawley's omission of additional de-tails does not suggest that he recklessly or intentionally sought to deceive the judge. Labelling Crawley's omission of the criminal histories as "deceptive" does not make it so. *See*

*Johnson*, 580 F.3d at 671 ("Conclusory, self-serving statements are not enough to obtain a *Franks* hearing."). As the district court found, "[a]ny failure on Crawley's part to elaborate about the confidential sources' reliability was not an intentional or reckless omission."

Second, Woodfork has similarly failed to put forth evidence of any intent to mislead the judge regarding the location of the place to be searched. Woodfork points to Crawley's reference to "Franklin and English" as evidence that Crawley intended to mislead the judge. But that interpretation is inconsistent with the record, which shows that Crawley explained that law enforcement understood "Franklin and English" to refer to Woodfork's home at 1220 North Franklin Street, which is located just one tenth of a mile from the Franklin and English intersection. The judge did ask clarifying questions about the intended location of the drug transaction, indicating that the judge was not in fact misled. The issuing judge could have asked more questions about this issue, but the judge's apparent satisfaction with Crawley's responses and failure to probe Crawley's testimony any further does not support the conclusion that Crawley intended to mislead the judge. Accordingly, Woodfork has presented no facts to support a preliminary showing that Crawley recklessly, let alone deliberately, disregarded the truth of the location to be searched. *See Kienast*, 907 F.3d at 531. There is simply no suggestion in the record that Crawley had "obvious reason to doubt the truth" of his testimony before the issuing judge. *Johnson*, 580 F.3d at 670.

We are also mindful that Crawley appeared in person to testify before the county judge, who questioned and evaluated Crawley's credibility himself. *Cf. United States v. Sutton*,

742 F.3d 770, 775 (7th Cir. 2014) ("Finally, the CI personally appeared and presented his affidavit to the county judge, allowing the judge to evaluate his knowledge and credibility."); *Sims*, 551 F.3d at 644 (live testimony in a probable cause hearing "allow[s] the judge to evaluate the informant's knowledge, demeanor, and sincerity."). Submitting to the court's questioning under oath and answering all of the court's questions does not suggest that Crawley intended to omit details or mislead that judge. Indeed, nothing in the transcript suggests that Crawley responded evasively or did not provide complete responses to the questions posed by the judge.[3]

Accordingly, we conclude that the district court did not clearly err in denying Woodfork a *Franks* hearing.

## B. Good-faith Exception

The district court held that even if there was insufficient probable cause to issue the search warrant, *Leon*'s good-faith exception exempts the evidence recovered in the search from suppression. Woodfork argues this was error and contends that the testimony in support of the search warrant was so lacking that it demonstrates a lack of good faith by Crawley

---

[3] Woodfork argues that Crawley's use of verbal pauses like "um" indicates that Crawley was lying. That may be true in some circumstances, but not here. Reviewing the transcript of the probable cause hearing in its entirety, Crawley also paused before giving his own name, indicating that he, like most people, does not always speak in perfectly formulated complete sentences. But we do not doubt that Crawley was telling the truth when he gave his name on the record. The transcript also reflects several verbal pauses by the judge. These verbal pauses may indicate a fastidious court reporter, but they do not indicate deception by Crawley under these circumstances.

such that the good-faith exception should not apply. *See Leon*, 468 U.S. at 923.

At the outset, we note that "we need not decide whether the state judge who issued the warrant had a basis for finding probable cause," if we find that the search survives a motion to suppress under the good-faith exception of *Leon*. *United States v. Thompson*, 801 F.3d 845, 848 (7th Cir. 2015) (per curiam) (citing *Leon*, 468 U.S. at 919–23); *see also United States v. Clark*, 668 F.3d 934, 941 (7th Cir. 2012).

*Leon*'s good-faith exception to the warrant requirement provides that "the fruits of a search based on an invalid warrant may be admitted if the officers who executed the search relied upon the warrant in good faith." *United States v. Yarber*, 915 F.3d 1103, 1106 (7th Cir. 2019). "And an officer's decision to obtain a warrant creates a presumption that the officer acted in good faith." *Id.* Suppression, however, "remains an appropriate remedy if the officer misled the issuing judge with knowingly false information or reckless disregard of the truth." *United States v. Grisanti*, 943 F.3d 1044, 1049 (7th Cir. 2019). "The presumption of good faith … can be rebutted if the defendant shows that '(1) the judge issuing the warrant abandoned his detached and neutral role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable.'" *United States v. Mitten*, 592 F.3d 767, 771 (7th Cir. 2010) (quoting *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008)). "Overcoming the presumption of good faith is no small feat, as an officer cannot ordinarily be expected to question a judge's probable cause determination." *United States v. Adams*, 934 F.3d 720, 726–27

(7th Cir. 2019), *cert. denied*, 140 S. Ct. 824 (2020) (quoting *United States v. Lickers*, 928 F.3d 609, 619 (7th Cir. 2019)).

Here, Woodfork has not pointed to any evidence that the investigating officers, or Crawley in particular, acted in bad faith. Woodfork complains of Crawley's (and the department's) search warrant practices, but aside from criticizing the lack of detail in Crawley's testimony, Woodfork has not overcome *Leon*'s good-faith exception.[4] "An officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith." *United States v. Searcy*, 664 F.3d 1119, 1124 (7th Cir. 2011). If an officer "obtained a search warrant, the defendant shoulders the burden of satisfying one of the *Leon* exceptions." *Id.* Woodfork has not met that burden. There is no evidence that the issuing-judge abandoned his detached and neutral role. *See Mitten*, 592 F.3d at 771. There is no evidence that the officer was reckless or dishonest in his live testimony before the judge. *See id.* And, the warrant certainly was not so lacking in probable cause that it was unreasonable for Crawley to rely on it. *See id.*; *Yarber*, 915 F.3d at 1107 (warrant was not "so deficient in establishing probable cause as to preclude reasonable, good-faith reliance on it by

---

[4] Indeed, Woodfork's counsel wastes time in footnote 6 of his opening brief criticizing the prosecutors and the federal courts generally for relying on "thin" affidavits. This accusation is unhelpful to our consideration of the facts of this case. Though counsel is correct that we have grown "weary of thin affidavits that suffer from the same omissions which [have] provoked our criticism in the past," *Thompson*, 801 F.3d at 848, this case is not about an affidavit where probable cause rested on omitted information. Counsel would do well to focus on the facts of the present appeal. Counsel's quibbling with the government over his citation to literary works in his reply brief is similarly unhelpful and unproductive.

the police"); *Fifer*, 863 F.3d at 765 (the defendant "offer[ed] no evidence that any of [the representations in the search warrant affidavit] are false—much less that they're reckless distortions or outright lies."). Indeed, it was based on several properly executed controlled buys. *See Bacon*, 991 F.3d at 837.

Woodfork relies on *Owens v. United States*, in which we found the search warrant affidavit to be "[s]o inadequate … that the search cannot be saved by *United States v. Leon*." 387 F.3d 607, 608 (7th Cir. 2004). That case is easily distinguishable. In *Owens*, the only evidence presented in the "barebones" affidavit was an allegation that an informant had bought "a quantity of crack" from the defendant three months prior. *Id.* The transaction was not a controlled buy, and there was no information about the quantity of purchased drugs. Accordingly, we reasoned that "there would be no basis for thinking either that the premises were a crack house or that the money received in the sale would still be on the premises." *Id.* Moreover, the information in the affidavit was stale and officers had not updated it since officers received the tip three months prior. Here, by contrast, Crawley described multiple controlled buys involving Woodfork, including a surveilled controlled buy occurring earlier that day. He described the orchestration of the most recent controlled buy in detail, including the quantity of drugs sold and the officers' procedures for that controlled buy. And, Crawley testified live before the judge, so the court could assess his credibility and freely ask him questions about the controlled buys that Crawley described.

Woodfork also relies on *Thompson*, 801 F.3d 845, but there, we held that the good-faith exception *did* apply. Though we expressed concern over the lack of detail contained within the

search warrant affidavit, we held that "we need not decide whether the state judge who issued the warrant had a basis for finding probable cause, since the search of [the defendant's] residence survives a motion to suppress under the good-faith exception." *Id.* at 848.

### III. Conclusion

The district court did not clearly err in denying Woodfork's request for a *Franks* hearing and properly denied Woodfork's motion to suppress. Accordingly, the judgment of the district court is

AFFIRMED.