In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2691

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CORY SANFORD,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 16-cr-20082 — **Colin S. Bruce**, *Judge.*

SUBMITTED SEPTEMBER 27, 2021[*] — DECIDED MAY 26, 2022

Before ROVNER, HAMILTON, and KIRSCH, *Circuit Judges.*

ROVNER, *Circuit Judge.* Cory Sanford was charged with possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C), possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C.

[*]On September 17, 2021, we granted the parties' joint motion to waive oral argument. Thus, the appeal is submitted on the briefs and record. FED. R. APP. P. 34(f).

§ 924(c)(1)(A)(i), and possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). The government obtained evidence against Sanford pursuant to a search warrant, and Sanford sought to challenge that search. Toward that end, Sanford filed a motion for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) (a "*Franks* hearing"), as to the veracity of the information provided in support of the search warrant. The district court conducted a pre-*Franks* hearing, and then denied the request for a *Franks* hearing and upheld the search. Sanford subsequently pled guilty to possession of heroin with intent to distribute and possession of a firearm in pursuance of a drug-trafficking crime, reserving his right to challenge the denial of his *Franks* motion on appeal. The only issue in this appeal is whether the district court erred in denying the request for a *Franks* hearing.

In seeking a no-knock search warrant in this case, Officer Benjamin Stringer and a confidential informant appeared before the state court judge on September 27, 2016. Stringer did not file an affidavit in support of the request for a search warrant. Instead, both Stringer and the confidential informant testified before the judge. Stringer testified that he observed a car driven by the informant exit the driveway of 608 N. Logan Avenue in Danville earlier that day, and that a subsequent search of that vehicle revealed several syringes and a small amount of crystal methamphetamine. The informant told him that she had acquired the drugs at the house at 608 N. Logan, and she described the home including the detail that a refrigerator was on the front porch of that home. They then drove by the house and Stringer confirmed that the house matched her description.

The confidential informant testified as well, and related that she had been inside the home at 608 N. Logan Avenue on a daily basis for the past week, and that Cory Sanford lived at that house along with his girlfriend. She further testified that she was at the house twice the night prior to the warrant hearing, and that on both occasions she traded items such as alcohol, cigarettes, and even a doorbell and alarm kit, for heroin. She testified that she saw Sanford holding a gun when she was there that night, and he told her that someone had robbed him a couple of weeks earlier and, pointing the gun at the front door, he stated "Bam, that's what's gonna happen to someone next time they try to rob my house."

She also stated that the methamphetamine found in her vehicle had been purchased from a third party while at Sanford's house, and that on another occasion she saw a baggie of heroin on the table at the house, and observed Sanford pick it up and place it into his pocket. Finally, she testified that she had injected heroin the night before the hearing.

The judge had an opportunity to question both Stringer and the informant at that hearing, and based on that testimony issued a no-knock warrant to search Sanford's house for controlled substances, drug paraphernalia, guns, evidence of ownership, and other related evidence. The officers executed the warrant the same day, and discovered 26.1 grams of heroin, a handgun, ammunition, digital scales, and $1,745 in cash.

In the district court, Sanford challenged that search, seeking a *Franks* hearing to determine the validity of the search warrant. As support for that challenge, Sanford presented a Declaration from Ashley Hinkle, identifying herself as the confidential informant who testified in the warrant hearing.

Specifically, Sanford relied upon the statements in Hinkle's Declaration that: officers told her that if she did not cooperate they would take her one-year-old daughter away from her; Stringer told her that she would not be charged with any new offenses and that an outstanding warrant for failure to appear in a misdemeanor case would be "taken care of;" she was told to inform the judge at the hearing that she had not been promised anything for testifying; and about three weeks after the hearing she was nevertheless arrested on the outstanding warrant. Sanford argued that Hinkle's lengthy criminal record and the existence of the active warrant, and Stringer's assurance that no criminal charges would be filed and the warrant would be taken care of, were not revealed to the issuing judge, and the omission of that information relevant to Hinkle's credibility would have altered the probable cause determination. Sanford sought a *Franks* hearing to assess the truthfulness of the information provided to the court in support of the request for a search warrant and the impact of any omissions on the probable cause determination.

"'A defendant is entitled to a *Franks* hearing—an evidentiary hearing regarding the veracity of information included in a search warrant application—if he can make a substantial preliminary showing that: (1) the warrant affidavit contained false statements, (2) these false statements were made intentionally or with reckless disregard for the truth, and (3) the false statements were material to the finding of probable cause.'" *United States v. Hancock*, 844 F.3d 702, 708 (7th Cir. 2016), quoting *United States v. Mullins*, 803 F.3d 858, 861–62 (7th Cir. 2015); *United States v. Williams*, 718 F.3d 644, 647 (7th Cir. 2013). That showing is not limited to false statements, but applies to material omissions as well. *Hancock*, 844 F.3d at 708; *Mullins*, 803 F.3d at 862. A hearing is not mandated absent

"allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171.

Sanford argued that Stringer and Hinkle intentionally misrepresented key facts and omitted other material facts that would have affected the issuance of the search warrant. The government opposed a *Franks* hearing arguing that because Stringer and Hinkle testified in person at the warrant hearing, the issuing judge had the opportunity to explore any such issues. The government informed the court that FBI agents had discussed Hinkle's Declaration with her and that she told them she did not prepare the Declaration and that much of it was false or twisted the actual circumstances to something essentially untrue.

When a defendant seeks a *Franks* hearing it can be difficult to delineate between sufficient and insufficient showings. *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013). In *McMurtrey*, we recognized that district courts sometimes resort to "pre-*Franks*" hearings to enable defendants to supplement or elaborate on their original submissions. *Id*. The focus of such a pre-*Franks* hearing is to determine whether the preliminary showing could be met. *Id*. We held in *McMurtrey* that "[s]uch hearings are well within a district court's discretion to aid it in making a sound decision on whether to hold a full *Franks* hearing." *Id*. In *McMurtrey*, we noted that pre-*Franks* hearings may be problematic if the government is allowed to present new evidence but the defense is not afforded a full opportunity for cross-examination. *Id*. Here, however, the district court explicitly recognized that concern, and noted that a full opportunity was given to cross-examine Stringer, and further stated that even if the hearing was considered a

full *Franks* hearing the result would be the same. Dist Ct. Order at 11–12 n.1. However characterized, Sanford does not challenge the hearing conducted in this case.

Because the arguments for and against the *Franks* hearing were both premised on the statements from Hinkle in her Declaration and whether Hinkle disowned those statements, the court in the "pre-*Franks*" hearing assessed the credibility of Hinkle and of the statements made by her in the Declaration in order to determine whether Sanford presented the necessary substantial preliminary showing. See *McMurtrey*, 704 F.3d at 509 (noting that "[it] is relatively difficult for a defendant to make the 'substantial preliminary showing' required under *Franks*. … [T]he claim of falsity should be substantiated by the sworn statements of witnesses.") At the hearing, Hinkle's testimony veered from the statements in the Declaration in some significant ways. For instance, with respect to the claim that the officers threatened to take her daughter away, Hinkle now testified that her daughter was in foster care and she had a visit scheduled for the next day and was informed she would miss that visit if she did not cooperate, but she was never threatened that they would take her daughter away. She further clarified that only Stringer, not the prosecutor, told her to say that she had not been promised anything, and she had been guaranteed only that she would not be arrested that night; she further acknowledged that Stringer had told her only that he would see what he could do about the warrant but could not make any promises. Finally, Hinkle testified to prior convictions for: possession of a controlled substance, residential entry and resisting; possession of a syringe and false informing; and two convictions for theft. The district court also heard testimony from Stringer that was largely consistent with that testimony from Hinkle.

Following that testimony, the district court made some factual findings. The court found that Hinkle's statement in the Declaration that she was told her daughter would be taken away if she failed to cooperate was "patently untrue." The court also found that it was clear that Hinkle hoped that she would not be arrested for the drug purchases or on the outstanding warrant if she cooperated, but that no promises were actually made to her. We afford special deference to a district court's credibility determination, and review findings of fact only for clear error, and there is no basis for finding error here. *United States v. Clark*, 668 F.3d 934, 940 (7th Cir. 2012); *United States v. Glover*, 755 F.3d 811, 815 (7th Cir. 2014). The district court then concluded that a full *Franks* hearing was not warranted because Sanford had not made a substantial showing that the testimony in support of the warrant contained false statements or omissions, made intentionally, that were material to the finding of probable cause.

On appeal, Sanford argues that a *Franks* hearing was necessary because Stringer failed to inform the state court judge about Hinkle's criminal history or her pending charges. Sanford contends that Hinkle claimed that Stringer told her that if she cooperated then she would not be arrested for the drugs recovered in the stop or for the outstanding warrant. According to Sanford, that information and Hinkle's criminal history would have altered the probable cause determination for the search warrant.

The district court's findings following the pre-*Franks* hearing torpedo any argument based on the failure to reveal promises made to Hinkle that she would not be arrested for the drugs or for the outstanding warrant. The district court found that no such promises were made to Hinkle, and

therefore any claim based on that allegation is meritless. The only argument in favor of a *Franks* hearing that survives is the claim that Stringer failed to inform the state court judge of Hinkle's criminal history, including the outstanding warrant for the failure to appear in a misdemeanor case.

In order to obtain a *Franks* hearing on that basis, Sanford had to make a substantial preliminary showing that the omission was material to the probable cause determination and that the information was omitted deliberately or with reckless disregard for the truth. *Glover*, 755 F.3d at 820. We addressed an analogous situation in *United States v. Woodfork*, 999 F.3d 511 (7th Cir. 2021). In that case, the defendant similarly sought a *Franks* hearing based on the omission of the confidential sources' criminal histories and other details about their credibility. We held that the omission of the confidential sources' criminal history in that case was not material to the finding of probable cause. *Id.* at 516–17. First, we noted that the probable cause determination in that case did not rest solely on the unverified tip from the confidential informant, but included controlled-buy transactions of which the testifying officer had direct knowledge, which made the informant's reliability and credibility less relevant to the probable cause determination. *Id.* at 517. Secondly, we emphasized that the officer testified in person before the judge, and therefore, unlike the consideration of a written affidavit, the judge had the opportunity to ask the officer questions regarding the confidential sources' backgrounds and criminal histories. *Id.* We expressed confidence that "warrant-issuing judges are aware that the individuals upon whom law enforcement relies to make drug purchases through controlled buys are likely to have criminal histories," and that "it is not a stretch to assume that the judge here knew that a confidential source buying methamphet-

amine likely had some criminal history." *Id*. We concluded that if the issuing judge believed that the confidential sources' criminal history or motivations were relevant to the probable cause determination, the judge could have asked the officer questions as to those matters. *Id*. Accordingly, *Woodfork* makes clear that the confidential informant's criminal history is not always material to the probable cause determination.

That does not mean that the failure to reveal an informant's criminal history is never material to the probable cause determination. Indeed, we have recognized that the failure to reveal an informant's criminal history can be a factor necessitating a *Franks* hearing. See *Glover*, 755 F.3d 811. In *Glover*, the issuing judge based the probable cause determination on a written affidavit from an officer, which omitted highly relevant and damaging information about the informant's credibility including his criminal record while serving as an informant, his prior use of aliases to deceive the police, and his expectation of payment for his information. *Id*. at 817. The informant's tip had only minimal corroboration, there was no evidence of any testimony by the informant, and the affidavit "did not provide the magistrate with even a minimum of information on credibility that might have triggered further inquiry." *Id*. at 818.

The materiality of the omission of criminal history, then, depends on the significance of the history in light of the totality of the circumstances, including considerations of other factors relevant to the credibility determination including "the level of detail, the extent of firsthand observation, the degree of corroboration, the time between the events reported and the warrant application, and whether the informant appeared or testified before the magistrate." *Id*. at 816. In *Glover*, we held

that because vital credibility information was omitted from the affidavit, "[t]he probable cause affidavit here left the magistrate unable to fulfill his role as a neutral arbiter and therefore provided an insufficient basis for finding probable cause to support the warrant." *Id*. at 818.

In the circumstances presented here, the failure to affirmatively reveal Hinkle's criminal history did not impact the ability of the magistrate to fulfill that role and is insufficient to require a *Franks* hearing. Although the probable cause determination depended largely on the information from the confidential informant, Hinkle, with only some verification of details by the officer, and in that way lacks the corroboration presented by the controlled buys in *Woodfork*, here the issuing judge was presented with testimony from the confidential informant, Hinkle, herself. Therefore the issuing judge did not have to depend upon a written affidavit or even testimony from an officer. The judge had the opportunity to question Hinkle as to any issues of importance to the judge in making the credibility determination and in deciding whether probable cause was established. Accordingly, the failure of Stringer to discuss Hinkle's criminal history did not prevent the state court judge from accessing that information if it proved significant to the judge.

Moreover, Hinkle's own testimony apprised the state court judge that Hinkle had engaged in past criminal conduct. Hinkle acknowledged repeatedly purchasing illegal drugs including methamphetamine and heroin, and unlawfully consuming such drugs. There is no doubt, therefore, that the state court judge was aware that Hinkle was a person who had committed criminal conduct in the past. And given that Hinkle provided that information only after she was found in

possession of methamphetamine, the issuing judge was also aware that Hinkle had an incentive to testify for the government because she had a potential pending criminal charge. The state court certainly could have inquired further of Hinkle to determine whether she had prior convictions for that or other criminal conduct if those facts were important to the judge in the probable cause determination. As the district court found, Hinkle had an extensive criminal history due to her drug addiction and theft crimes, but her history did not compare to the history of the informant in *Glover*, which included crimes while working as an informant. In contrast to *Glover*, any omitted criminal history information here was not different in kind from the information already in front of the judge making the probable cause determination. The issuing judge had an opportunity to hear the information directly from the confidential informant and to assess the demeanor and ask any questions in determining credibility. *Woodfork*, 999 F.3d at 518–19; *United States v. Sutton*, 742 F.3d 770, 775 (7th Cir. 2014); *United States v. Sims*, 551 F.3d 640, 645 (7th Cir. 2008). As we recognized in *Woodfork*, warrant-issuing judges are aware that confidential informants in drug purchases are likely to have criminal histories, and Hinkle in fact admitted to criminal conduct. The district court did not err in determining that a *Franks* hearing was not necessary based solely on the failure to discuss the criminal history, which was unremarkable in nature for a person involved in ongoing drug use, in the testimony to the issuing judge in this case.

Accordingly, the decision of the district court is AFFIRMED.