In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1799
UNITED STATES OF AMERICA,
 Plaintiff-Appellee,
 v.

DARELL ROLAND,
 Defendant-Appellant.
 ____________________

 Appeal from the United States District Court for the
 Southern District of Indiana, Indianapolis Division.
 No. 1:20-cr-00251 — James P. Hanlon, Judge.
 ____________________

 ARGUED FEBRUARY 16, 2023 — DECIDED MARCH 1, 2023
 ____________________

 Before RIPPLE, SCUDDER, and ST. EVE, Circuit Judges.
 SCUDDER, Circuit Judge. Indianapolis police responded to
St. Vincent Hospital around 2:15 a.m. on July 9, 2020, after
Robert Banks arrived there after being shot multiple times.
Following conversations with Banks and his friend, Darell
Roland, officers looked in Roland’s Buick and saw blood and
two handguns inside. Sergeant Jordan Lewis then sought a
warrant to search the Buick, and a Marion County judge
quickly granted that permission.
2 No. 22-1799

 The officers came to learn that the handguns belonged to
Roland and that he had a prior conviction for robbery. A fed-
eral charge followed under the felon-in-possession statute, 18
U.S.C. § 922(g)(1). Roland pleaded guilty but reserved the
right to appeal his challenge to the state court’s issuance of
the search warrant, which he says was based on incomplete
information. The district court rejected the challenge. We do
too and affirm.
 I

 A

 Upon arriving at St. Vincent Hospital, the first thing the
police did was speak to Robert Banks. He told them he had
been shot three times in the left hip. Another officer then
spoke to Darell Roland, who explained “that he drove Robert
Banks to the hospital in his Buick Park Avenue that [was]
parked in the parking lot.” Sergeant Jordan Lewis then
walked outside, found Roland’s Buick in the hospital parking
lot, and saw the blood and firearms through the window.
 Sergeant Lewis provided all this information in his search
warrant application, which sought permission to search for
and seize the following:
 1. Firearms, firearm accessories, firearm parts,
 paperwork relating to the purchase or sale of
 firearms;
 2. spent cartridge casings, spent bullets, bullet
 fragments, live bullets;
 3. documents showing ownership and/or other
 occupants of the vehicle;
No. 22-1799 3

 4. spent cartridge casings, spent bullets, bullet
 fragments, live bullets;
 5. DNA, trace evidence, latent prints; and
 6. photographs/video of interior and exterior
 of the vehicle.
Sergeant Lewis submitted the warrant application at
3:18 a.m., and the state-court judge issued the warrant at
3:26 a.m.
 Detective Gregory Shue then searched Roland’s Buick. In
addition to the blood and handguns visible through the win-
dow, Detective Shue and an evidence technician found am-
munition in a duffel bag and a loaded magazine in the armrest
console.
 At some point that morning Detective Shue spoke further
with Banks. We cannot determine from the record whether
this happened before or after Sergeant Lewis submitted the
warrant application. Either way, Banks told Detective Shue
that he did not know who shot him, that he called Roland af-
ter being shot, and that Roland drove him to the hospital.
None of this information appears in Sergeant Lewis’s warrant
application and instead comes from an affidavit Detective
Shue prepared later in the day on July 9 to support Roland’s
arrest.
 After Detective Shue searched the Buick, an officer drove
Roland to the police station. Roland waived his Miranda rights
and agreed to an interview in which he explained to Detective
Shue that the car, handguns, and ammunition belonged to
him. He also told Detective Shue that he had two prior con-
victions—one for robbery and another for possessing cocaine.
Detective Shue confirmed Roland’s criminal history and then
4 No. 22-1799

arrested him for possessing a firearm as a felon. A federal
charge followed on September 24, 2020.
 B

 Roland moved to suppress the evidence seized from his
Buick and his statements to Detective Shue, contending not
only that there was not probable cause to issue the warrant
but also that the warrant application omitted material infor-
mation that would have negated probable cause. Roland at-
tached both Sergeant Lewis’s warrant application and Detec-
tive Shue’s affidavit to his motion.
 The district court disagreed. First, the district court deter-
mined that probable cause supported the issuance of the
search warrant. Banks, the district court reasoned, was a vic-
tim with multiple gunshot wounds. That—plus the handguns
and blood in Roland’s Buick, which Banks rode in to the hos-
pital—was plenty to establish a fair probability that evidence
relating to a crime would be found in the car. From there the
district court determined that Roland’s assertion that Ser-
geant Lewis omitted material information from the warrant
application was conclusory and not supported by facts or an
evidentiary proffer. So the district court denied Roland’s sup-
pression motion without holding an evidentiary hearing.
 Roland then pleaded guilty to the § 922(g)(1) charge but
reserved the right to appeal the adverse suppression ruling.
His appeal is now before us.
 II

 The Fourth Amendment requires that “no Warrants shall
issue, but upon probable cause.” U.S. Const. amend. IV. To
establish probable cause, a warrant application must “contain
No. 22-1799 5

facts that, given the nature of the evidence sought and the
crime alleged, allow for a reasonable inference that there is a
fair probability that evidence will be found in a particular
place.” United States v. Zamudio, 909 F.3d 172, 176 (7th Cir.
2018) (quoting United States v. Aljabari, 626 F.3d 940, 944 (7th
Cir. 2010)). Of course, police cannot obtain a warrant by pre-
senting the issuing judge with false information or omitting
material information. See United States v. Woodfork, 999 F.3d
511, 516 (7th Cir. 2021). That would undermine the very pur-
pose of the Fourth Amendment’s warrant requirement.
 Roland contends that is what the officers did here. He in-
sists that Sergeant Lewis omitted six material facts from his
warrant application:
 • Banks did not know his shooter;
 • Banks knew Roland;
 • Banks and Roland were friends;
 • Banks called Roland to get a ride to the hospital;
 • Roland picked up Banks; and
 • Roland brought Banks to the hospital.

Roland sees these six facts as negating probable cause. At the
very least, he says the district court should have conducted an
evidentiary hearing—commonly called a Franks hearing—to
determine whether the facts were deliberately or recklessly
omitted from the application. See Franks v. Delaware, 438 U.S.
154, 171 (1978).
 To be sure, if a criminal defendant moves to suppress on
the contention that the warrant application was materially in-
accurate or incomplete, he may be entitled to a Franks hearing.
He can obtain one by making a “substantial preliminary
showing” of both the materiality of the alleged inaccuracy or
6 No. 22-1799

omission and the recklessness or deliberate intent of the of-
ficer. Woodfork, 999 F.3d at 516 (quoting United States v. Glover,
755 F.3d 811, 820 (7th Cir. 2014)). If a defendant makes this
preliminary showing, the district court should hold a Franks
hearing to resolve the disputed point of fact regardless of
whether the defendant explicitly requested a hearing or in-
stead just moved to suppress evidence obtained from the ex-
ecution of a search warrant. See Franks, 438 U.S. at 172 (hold-
ing that “the defendant is entitled, under the Fourth and Four-
teenth Amendments, to his hearing” if he makes the required
preliminary showing).
 But the district court was right to conclude that no hearing
was necessary here. Even if we take Roland at his word that
Sergeant Lewis recklessly or deliberately omitted the six high-
lighted facts, he did not make the preliminary showing that
those omissions “would alter the probable cause determina-
tion.” Woodfork, 999 F.3d at 516 (quoting Glover, 755 F.3d at
820). In a word, Roland failed to establish materiality.
 The shortcoming with Roland’s position is that there can
be probable cause to search a space belonging to someone
who is not—or at least not yet—suspected of committing a
crime as long as the facts establish a fair probability that the
search will uncover evidence that will aid the police in their
investigation. See Warden v. Hayden, 387 U.S. 294, 306–07
(1967) (requiring that a warrant seeking “mere evidence” of a
crime—as opposed to contraband, the fruit of a crime, or an
instrumentality of a crime—contain probable cause that the
evidence will “aid in a particular apprehension or convic-
tion”).
 The issuing judge’s determination of probable cause there-
fore did not hinge on whether, at the time Sergeant Lewis
No. 22-1799 7

presented the warrant application, the police suspected Ro-
land of shooting Banks. Roland may be right that the facts
omitted from the warrant application, if accepted as true, ex-
onerated him from that offense. But at the critical time—in-
deed, during the middle of the night—Banks was still in the
hospital with gunshot wounds and Banks’s blood was still in
Roland’s car along with two clearly visible handguns. Ser-
geant Lewis did not know whom the guns in the car belonged
to, nor did he know whether those guns were the same guns
that someone used to shoot Banks. That explains why Ser-
geant Lewis requested a warrant to search for, among other
things, “[f]irearms, firearm accessories, firearm parts, paper-
work relating to the purchase or sale of firearms,” “spent car-
tridge casings, spent bullets,” “DNA, trace evidence, [and] la-
tent prints.” There was a fair probability that such evidence
would assist the police in investigating Banks’s shooting re-
gardless of Roland’s own culpability. In other words, there
was probable cause either way—with or without the added
facts Roland underscores on appeal.
 III

 Indianapolis police did exactly what they should have
done. When they learned that potential evidence of a crime
was inside Roland’s car, they stopped and took the safest,
most prudent course possible by requesting a search warrant.
Nothing they might have omitted from the warrant applica-
tion changes the fact that probable cause supported the state
court’s issuance of the warrant. On these facts, then, we
AFFIRM.