In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-3399

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RYAN DOUGLAS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 18-cr-30063 — **Colleen R. Lawless**, *Judge.*

_____

ARGUED MAY 23, 2024 — DECIDED JANUARY 22, 2026

_____

Before JACKSON-AKIWUMI, LEE, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge*. Ryan Douglas appeals the denial of his motion to suppress evidence seized from the search of a house and a later search of his cell phone. Douglas argued that the complaint affidavits in support of the underlying warrants lacked probable cause and thus should not have been executed. The district court disagreed with Douglas and, alternatively, concluded that the police relied on the warrants in

good faith. Finding the good-faith exception to the exclusionary rule applies, we affirm.

## I.  BACKGROUND

### A. Factual Background

In early 2018, law enforcement in Quincy, Illinois, began receiving information from multiple confidential informants that Ryan Douglas was selling methamphetamine and cocaine in the area. The informants reported that Douglas drove a black BMW registered to his girlfriend.

Quincy police later conducted two controlled buys relevant to their investigation of Douglas in February 2018.[1] In the first, a confidential source purchased cocaine from an individual whose drugs were supplied by a man who drove a black BMW. In the second, a confidential source bought methamphetamine from someone police believed to be Douglas, who was driving a black BMW.

In April 2018, law enforcement arranged another controlled buy. Law enforcement utilized a confidential source to complete the purchase. First, law enforcement searched the confidential source for contraband. Next, the officers provided the confidential source a recording device and $500 of buy money to purchase the drugs from Douglas. The source contacted Douglas to buy methamphetamine. Douglas said he'd meet the source soon after he was done shopping. About ten minutes later, an officer observed a black BMW pull into the driveway of 1726 N. 16th Street in Quincy. Douglas exited

---

[1] A "controlled buy is a familiar law enforcement tool" in which "officers enlist a confidential informant to buy drugs from a suspected dealer." *United States v. Bacon*, 991 F.3d 835, 837 (7th Cir. 2021).

the vehicle, carried several items into the house, and then drove away in the BMW to meet the source. Upon Douglas's arrival at the meet location, the source got into the BMW with Douglas and gave him the $500 of buy money in exchange for methamphetamine. Following the controlled purchase, Douglas returned to 1726 N. 16th Street and went inside.

Based on this information, on April 17, 2018, Quincy police presented a complaint affidavit to an Adams County (Illinois) Circuit Court judge in support of a search warrant to search 1726 N. 16th Street. Finding probable cause, the Adams County judge issued the warrant. The next day, officers conducted surveillance on the home and observed Douglas leaving in the black BMW. After observing Douglas commit a traffic infraction, law enforcement initiated a traffic stop.

While the traffic stop was being conducted, officers executed the search warrant for 1726 N. 16th Street. They seized about $7,500 (including some of the controlled buy money), plastic baggies, digital scales, and inositol powder.

Douglas was placed under arrest, and his vehicle seized. During the traffic stop, officers located an iPhone in the BMW. Later that day, law enforcement applied for a warrant to search the iPhone. In the complaint affidavit, law enforcement noted Douglas's participation in the April controlled buy and the results of the search at 1726 N. 16th Street. The officer also represented in the search warrant application that the controlled buy had been facilitated by a call placed to Douglas while Douglas was at a store. A different Adams County judge granted this search warrant. A search of the phone revealed text messages related to drug sales.

### B. Procedural Background

After the case was referred for federal prosecution, a federal grand jury subsequently indicted Douglas for distribution of methamphetamine. 21 U.S.C. §§ 841(a)(1), (b)(1)(B). Douglas later moved to suppress the evidence obtained from the house and phone searches, arguing that the warrant applications lacked probable cause. For the warrant to search the house, Douglas argued there was no nexus between the house and his alleged illegal activity. For the warrant to search his phone, Douglas contended that the warrant application did not reveal a "fair probability that evidence of the crime of delivery of methamphetamine would be found" on his phone.

The district judge referred the motion to a magistrate judge who issued a Report and Recommendation finding probable cause for the warrant applications and recommended that the district court deny Douglas's motion. In the alternative, the magistrate judge also found the evidence need not be suppressed because the officers acted in good-faith reliance on facially valid search warrants. Douglas objected, but the district court agreed with the magistrate judge's recommendation and denied Douglas's motion to suppress. *United States v. Douglas*, No. 18-cr-30063, 2020 WL 111005 (C.D. Ill. Jan. 9, 2020).

Douglas then entered a conditional guilty plea, reserving his right to appeal the suppression ruling. The district court later sentenced him to 84 months' imprisonment. This appeal followed.[2]

---

[2] United States District Court for the Central District of Illinois Judge Sue Myerscough ruled on Douglas's motion to suppress and accepted

## II. ANALYSIS

### A. Legal Background

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. Probable cause exists when, based on the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Calligan*, 8 F.4th 499, 504 (7th Cir. 2021) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Douglas argues that the warrants to search the residence at 1726 N. 16th Street and his iPhone were not supported by probable cause and thus the district court erred in denying his suppression motion.

Our standard of appellate review is "complex" when reviewing a district court's denial of a motion to suppress evidence obtained pursuant to a warrant. *United States v. Taylor*, 63 F.4th 637, 652 (7th Cir. 2023) (quoting *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008)). "The district court's findings of historical fact are reviewed for clear error, but we give no weight to either the district judge's legal conclusions or her determination that the facts add up to probable cause." *Id.* (citation and quotations omitted). When the district court, as here, "made no factual findings and simply examined the affidavit submitted to the state judge who issued the search warrant, we evaluate, giving great deference to the issuing judge's conclusion, whether that judge acted on the basis of probable cause." *United States v. Thompson*, 801 F.3d 845, 847 (7th Cir. 2015) (per curiam) (citations and quotations omitted).

_____

Douglas's conditional guilty plea. The case was later transferred to Judge Colleen Lawless upon her appointment to the bench, who sentenced Douglas.

Even if a warrant is invalid because the affidavit fails to support a finding of probable cause, we may still affirm the district court's denial of a suppression motion if the good-faith exception to the exclusionary rule applies. *See United States v. Lickers*, 928 F.3d 609, 618 (7th Cir. 2019); *United States v. Reichling*, 781 F.3d 883, 889 (7th Cir. 2015); *United States v. Koerth*, 312 F.3d 862, 865–66 (7th Cir. 2002).

"As a general matter, the exclusionary rule prohibits introduction of evidence that the police obtained illegally." *United States v. Huskisson*, 926 F.3d 369, 374 (7th Cir. 2019) (citation omitted). But this rule has exceptions, including the *Leon* good-faith exception, which provides that suppression is not warranted when police officers who executed the warrant relied in good faith on the issuing judge's decision of probable cause. *Lickers*, 928 F.3d at 618–19 (discussing *United States v. Leon*, 468 U.S. 897 (1984)). Under the good-faith exception, an "officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith." *Id.* at 618 (citation omitted). A defendant is able to rebut this good-faith presumption in various situations, including "(1) when the affiant was dishonest or reckless when preparing the affidavit, (2) when the judge abandons the judicial role of neutrality, or (3) when the affidavit is so 'bare bones' and lacking in probable cause that reliance on it is unreasonable." *United States v. Felton*, 159 F.4th 1128, 1135 (7th Cir. 2025) (citations omitted). A defendant may argue the existence of this third circumstance by establishing that police ignored well-established legal principles. *United States v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009). If we "have held that materially similar affidavits lacked probable cause," then "the executing officers could not have reasonably believed the warrant was valid." *Id.* "We review de novo whether the good-faith exception to the

exclusionary rule applies to a search based on a warrant later determined to be invalid." *United States v. Matthews*, 12 F.4th 647, 652 (7th Cir. 2021) (citation omitted).

### B. Discussion

On appeal, Douglas argues that the warrants to search the residence at 1726 N. 16th Street and his iPhone were not supported by probable cause. We discuss each warrant in turn.

*1. Residential Search Warrant*

"The task of the issuing judge is to make a 'practical, commonsense decision' whether, in light of the facts in the affidavit, there is a fair probability that contraband or evidence of a crime will be discovered in a particular place." *United States v. Carswell*, 996 F.3d 785, 791 (7th Cir. 2021) (quoting *Koerth*, 312 F.3d at 866). And when an affidavit is the only evidence presented to support probable cause, the court issuing the warrant focuses "on the strength of the affidavit." *United States v. Edwards*, 34 F.4th 570, 580 (7th Cir. 2022) (quoting *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003)).

Here, the complaint affidavit detailed multiple controlled buys involving Douglas. It stated that, during the last buy, Douglas drove directly to and from 1726 N. 16th Street. The affidavit also noted that Douglas carried "several items" into the home. We have held that "judges may permissibly infer that evidence of drug dealing is likely to be found where the dealer lives." *United States v. Haynes*, 882 F.3d 662, 666 (7th Cir. 2018) (per curiam) (citation modified). Nothing in the affidavit, however, stated whether Douglas owned, rented, or stayed at 1726 N. 16th Street. An Adams County judge nonetheless granted the warrant application, determining that the totality of the complaint affidavit provided "facts sufficient to

show probable cause." The warrant authorized the police to search for evidence of drug crimes, including methamphetamine, cocaine, drug paraphernalia, buy money, drug ledgers, and cell phones.

Douglas argues that the connection between the home and his drug dealing was too weak to establish probable cause to search the residence. This argument has some merit. We faced a similar case in which officers received a warrant to search a residence they believed was connected to drug dealing. *See United States v. Yarber*, 915 F.3d 1103 (7th Cir. 2019). In *Yarber*, the affidavit stated that the defendant repeatedly used his girlfriend's car to complete drug transactions. *Id.* at 1104. Surveillance established that the defendant drove to his girlfriend's apartment immediately after two drug sales and often parked there. *Id.* We affirmed the denial of a motion to suppress but conceded that the case was "far from open and shut." *Id.* at 1105. In the end, we determined, under the totality of the circumstances, the state-court judge was entitled to draw the reasonable inference that an experienced drug dealer might keep evidence of his crimes "within the apartment he visited immediately after the sales." *Id.* at 1105–06. But we warned that this holding does not "mean that any place to which a suspected drug dealer travels after a drug sale is subject to a search." *Id.* at 1106.

Recognizing that warrants may be issued even in the absence of direct evidence linking a crime to a particular place, the search warrant affidavit here approaches the line we drew in *Yarber*, presenting too tenuous a connection between the house at 1726 N. 16th Street and Douglas's drug dealing. *See United States v. Orr*, 969 F.3d 732, 734, 737 (7th Cir. 2020) (dealer's residence connected to numerous drug sales); *United*

*States v. Miles*, 86 F.4th 734, 741 (7th Cir. 2023) (residence connected to two drug sales, raising probability that evidence of drug trafficking would be found there); *United States v. Scott*, 731 F.3d 659, 662, 666 (7th Cir. 2013) (same).

But we do not resolve the issue. The officers who searched 1726 N. 16th Street secured a warrant, so we presume they acted in good faith and thus any evidence they discovered is admissible under *Leon*'s good-faith exception. *United States v. Woodfork*, 999 F.3d 511, 519 (7th Cir. 2021) (citing *Leon*, 468 U.S. at 919–23). Douglas bears the burden of rebutting that presumption, *id.* at 520, but he has not done so. There is no evidence that the Adams County judge abandoned the judicial role of neutrality or that law enforcement was dishonest or reckless in preparing the complaint affidavit on which the warrant was based. Nor was the affidavit supporting the warrant so lacking in probable cause that law enforcement could not reasonably rely on it, as it detailed multiple properly executed controlled buys. *See Felton*, 159 F.4th at 1135; *Woodfork*, 999 F.3d at 520 (concluding officers could reasonably rely on warrant "based on several properly executed controlled buys"); *cf. Bacon*, 991 F.3d at 837 ("[A] controlled buy, when executed properly, is generally a reliable indicator as to the presence of illegal drug activity." (citation and quotations omitted)). It also provided evidence that Douglas had access to 1726 N. 16th Street immediately before and after a controlled buy.

Resisting this conclusion, Douglas argues that our warning in *Yarber*—that a drug dealer's one-time presence at a residence cannot support probable cause—put police on notice that the warrant here was invalid. There are two problems with this argument. First, the statement in *Yarber* is dicta, and

not a holding that would put officers on notice that the warrant was invalid. *See Bell*, 585 F.3d at 1052 (explaining that officers are responsible for knowing "applicable legal precedent" (citation and quotation omitted)). Second, even assuming that our statement in *Yarber* was sufficient to put officers on notice of anything, there is a timing problem. *Yarber* was decided in February 2019, nearly a year after the search warrant was executed. Those flaws are fatal to Douglas's argument.

In sum, Douglas has failed to rebut the presumption that *Leon's* good-faith exception applies. This precludes suppression of the evidence seized from the residence.

### 2. iPhone Search Warrant

We again look only to the strength of the affidavit underlying the warrant to search the iPhone to determine if probable cause supported its issuance. *Carswell*, 996 F.3d at 791. In the complaint affidavit, police described how Douglas used a phone to arrange multiple drug transactions, including answering a call to set up a sale while at a store. The affidavit also stated that the phone was found with Douglas when arrested.

The affidavit here is weak. While it supports an inference that Douglas used *a* cell phone, it does nothing to tie Douglas's criminal activity to *this* cell phone. On the other hand, this degree of certainty was not required because probable cause requires only a "fair probability" that evidence of a crime will be located in a particular location. *Gates*, 462 U.S. at 238; *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012).

But again, we need not determine whether there was probable cause to search the iPhone. Because officers received a

warrant, we presume they acted in good faith and therefore that any evidence they discovered is admissible. *Lickers*, 928 F.3d at 618. Douglas tries to rebut this presumption by arguing that the affidavit was so thin that "official belief" in probable cause was "entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted). But we disagree. Relying on an affidavit that discussed the controlled buy that precipitated Douglas's arrest, the Adams County judge reasonably inferred that evidence indicative of drug crimes would be on Douglas's phone. It also noted that the cooperator called Douglas on the phone and Douglas revealed that he was "leaving the store" and would be at the meeting location for the controlled buy shortly. This would suggest Douglas used a cell phone when completing this call. Lastly, the affidavit revealed that law enforcement had recovered buy money, plastic baggies, digital scales, and inositol powder from the location Douglas visited immediately before and after the controlled buy. While thin, the affidavit here was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (citation omitted). Therefore, the evidence from the iPhone need not be suppressed.

## III.   CONCLUSION

For these reasons, we AFFIRM the district court's denial of Douglas's motion to suppress.