In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2475

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TYRICE GLOVER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 CR 981-1 — **John F. Grady**, *Judge.*

ARGUED MARCH 31, 2014 — DECIDED JUNE 18, 2014

Before WOOD, *Chief Judge*, and WILLIAMS and HAMILTON,
*Circuit Judges*.

HAMILTON, *Circuit Judge*. Tyrice Glover appeals from his
convictions for possessing heroin with intent to distribute,
21 U.S.C. § 841(a)(1), and possessing a firearm in furtherance
of drug trafficking, 18 U.S.C. § 924(c)(1)(A). Glover pled
guilty but reserved his right to appeal the denial of his mo-
tion to suppress the guns, drugs, and paraphernalia seized
from his home pursuant to a search warrant. He argues the

warrant was not supported by probable cause. He argues further that the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984), should not apply.

We conclude that the affidavit provided an insufficient basis for the search warrant. It omitted all information regarding the informant's credibility. That undermined the issuing magistrate's ability to perform his role as a neutral arbiter of probable cause. Regarding the good faith exception, the question is close, but in light of our prior cases, the affidavit was not so "bare bones" that officers' good faith reliance on it was unreasonable. Nevertheless, the affidavit's omission of all information about the informant's credibility is sufficient to raise an inference of reckless disregard for the truth that could undermine the good faith exception under *Leon*. We reverse and remand for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

I.   *Factual and Procedural Background*

Chicago Police Officer Jason Brown submitted to a state court a probable cause affidavit containing the following facts. On July 23, 2010, confidential informant "Doe" spoke with Officer Brown regarding a felon, known to Doe as "T.Y.," in possession of two handguns: a black semiautomatic and a black .38-caliber revolver. T.Y. lived at 905 Kedvale in Chicago. Doe said he had seen the guns while in the house the day before and "many times over the course of the last six weeks." Doe said T.Y. needed the guns because he had a "dope spot" (a street-level point of sale) for heroin. Doe also said T.Y. was a member of the Traveler Vice Lords gang and part of a "stick-up crew" who robbed people carrying large amounts of money or drugs.

The affidavit also described Officer Brown's corroboration of several facts. He used the address to find a photograph of Glover in police records, and Doe identified Glover as "T.Y." Officer Brown also used police records to confirm that Glover had two felony convictions and that he had lived at 905 Kedvale as of May 2009 and January 2010. Finally, Officer Brown drove Doe to the 900 block of Kedvale Avenue, and Doe identified the red-brick home at 905 as the house where he had seen T.Y. with the guns.

Officer Brown's affidavit did not include any available information on Doe's credibility. Doe had been an informant for the Chicago police for six years. He had been affiliated with a gang. He had fourteen criminal convictions, including four for crimes committed while he was working as an informant. On two prior occasions, Doe had used aliases when questioned by police officers. Doe had also received payment for providing information to the police in the past.

Officer Brown promptly filed his probable cause affidavit and took Doe with him to appear before a state court judge. There is no record of any testimony by Doe. The judge issued the search warrant for "two handguns (one black semiautomatic handgun and one black 38 cal. Revolver), any ammunition or assorted attachments, and any documents showing or establishing proof of residency." That evening a team of officers executed the warrant and found a nine-millimeter semiautomatic handgun, a .38-caliber revolver, an assault rifle, ammunition, fourteen grams of heroin, and drug paraphernalia. Doe was paid $450 based on the result of the search.

Glover was arrested at the time of the search and was eventually charged in federal court with drug and firearm

offenses. He moved to suppress the evidence from the search and requested a *Franks* hearing regarding the officer's motives for omitting information about Doe from the affidavit. After the district court denied the motion to suppress and the request for a *Franks* hearing, Glover entered a conditional plea of guilty to charges of possessing heroin with intent to distribute and possessing a firearm for drug trafficking. He was sentenced to 90 months in prison. Glover reserved his right to bring this appeal.

II. *Discussion*

A. *Standard of Review*

On appeal from the denial of a motion to suppress, we review legal conclusions *de novo* and factual findings for clear error. *United States v. McGee*, 280 F.3d 803, 805 (7th Cir. 2002). Similarly, we review the denial of a *Franks* hearing for clear error, but any legal determinations that factored into the ruling are reviewed *de novo*. *United States v. Robinson*, 546 F.3d 884, 887 (7th Cir. 2008).

B. *Probable Cause for the Search Warrant*

"The essential protection of the warrant requirement of the Fourth Amendment" lies in the requirement that the usual inferences that reasonable people draw from evidence be drawn "'by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Illinois v. Gates*, 462 U.S. 213, 240 (1983), quoting *Johnson v. United States*, 333 U.S. 10, 13–14 (1948). A magistrate's determination of probable cause is given great deference on review, and the Fourth Amendment requires no more than a substantial basis for conclud-

ing that a search would uncover evidence of a crime. *Gates*, 462 U.S. at 236.

For cases where the affidavit is based on an informant's report, *Gates* adopted the "totality-of-the-circumstances analysis that traditionally has informed probable cause determinations." 462 U.S. at 238. Reliability, veracity, and basis of knowledge are all "highly relevant," but the totality-of-the-circumstances approach means "a deficiency in one may be compensated for … by some other indicia of reliability." *Id*. at 230, 233. In response to the concern that the totality-of-the-circumstances approach would limit the value of a magistrate's independent review, the Court noted that magistrates would have great freedom when drawing inferences related to probable cause. *Id*. at 240.

For evaluating the totality of the circumstances in informant cases, our decisions have developed five primary factors that we consider along with other pertinent concerns: the level of detail, the extent of firsthand observation, the degree of corroboration, the time between the events reported and the warrant application, and whether the informant appeared or testified before the magistrate. See, e.g., *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011).

Glover argues that Officer Brown's affidavit provided an insufficient basis for the search warrant because it (1) said nothing about the informant's credibility, (2) showed minimal corroboration, (3) lacked detail, (4) provided no basis of knowledge for the alleged drug crimes and robberies, and (5) was not supplemented with testimony when Doe appeared before the issuing judge. We focus on the first contention and agree with Glover. The complete omission of information regarding Doe's credibility is insurmountable, and it

undermines the deference we would otherwise give the decision of the magistrate to issue the search warrant.

In general, "no one factor necessarily dooms a search warrant." *Johnson*, 655 F.3d at 600. In applying these factors, the reviewing court typically concerns itself only with the content of the affidavit to determine whether the warrant is facially valid. See, e.g., *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003). In *Peck*, the affidavit was insufficient to establish probable cause. The only corroboration of the informant's tip was a search of the defendant's record, and the affidavit lacked detail even though the informant claimed to be the defendant's girlfriend. *Id*. at 757.

Cases that test the sufficiency of affidavits for warrants obtained based on informants are highly fact-specific, but information about the informant's credibility or potential bias is crucial. In *United States v. Bell*, for example, we emphasized that the failure to establish the informant's reliability raised the concern that the tip was provided to harass or remove a rival. 585 F.3d 1045, 1050 (7th Cir. 2009) ("For all we know, [the informant] could have been a rival drug dealer, an angry customer, or had some other beef with Bell, which is certainly a factor to consider when assessing the reliability of his statements."); see also *United States v. Koerth*, 312 F.3d 862, 867 (7th Cir. 2002) (government conceded probable cause was lacking where affidavit presented conclusory information from informant without track record). In contrast, in *United States v. Searcy*, 664 F.3d 1119, 1123 (7th Cir. 2011), we found probable cause despite limited detail where the affidavit showed that the informant had provided reliable information before, which also suggested the report was not motivated by animus against the defendant.

The affidavit here shows weaknesses similar to those found in *Peck* and *Bell*. As in *Peck*, Doe's tip was minimally corroborated. The police confirmed only minor facts and legal conduct. (Being a convicted felon is not itself indicative of criminal activity.) The tip also provided little detail. For example, while the descriptions of the firearms were fairly specific, Doe gave no indication of where they were in the house. Doe's generic allegations of T.Y's gang activity are not problematic on their own. (The warrant was focused on the firearms alone, not any other crimes.) When combined with Doe's checkered past, though, the gang allegations raise the same concern expressed in *Bell*: perhaps Doe was reporting Glover merely because of gang rivalries. Finally, Doe's appearance before the judge bolstered the reliability of the affidavit, but only slightly. Without any record we must assume that Doe did not testify.

To support the warrant in this case, the government relies on *United States v. Dismuke*, 593 F.3d 582 (7th Cir. 2010), which was abrogated on other grounds, as recognized in *United States v. Miller*, 721 F.3d 435, 438–39 (7th Cir. 2013). We also find *Dismuke* instructive. In *Dismuke*, as in this case, an informant alleged firearm possession by a felon, provided information about the types of guns, and said the guns had been seen firsthand and recently. And as in this case, the officer had corroborated only the defendant's picture, address, and criminal history. 593 F.3d at 585. The biggest problem in *Dismuke* was that the affidavit included a conclusory statement that the informant was "reliable" but provided no explanation for that critical claim, meaning it was entitled to no weight. Despite that shortcoming, we held that the affidavit in *Dismuke* was sufficient, though it was "a close case." *Id*. at 587.

Many elements of Glover's case are obviously quite similar to *Dismuke*. But there is one critical difference here: the complete omission of known, highly relevant, and damaging information about Doe's credibility—his criminal record, especially while serving as an informant; his gang activity; his prior use of aliases to deceive police; and his expectation of payment. The omission of that adverse information impaired the neutral role of the magistrate deciding whether to issue the warrant. As the government properly acknowledged at oral argument, such information is so essential to a witness's credibility that the same information regarding a government witness at trial would have to be disclosed to the defense as exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). See, e.g., *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) (payment to witness); *United States v. Young*, 20 F.3d 758, 764 (7th Cir. 1994) (criminal convictions). In *Dismuke*, there was no evidence that the police withheld from the magistrate any adverse information about the informant's credibility. The magistrate in *Dismuke* made the probable cause determination without meaningful credibility information, but there was no evidence that such information was available or material.

In this case, the omissions from the affidavit deprived the magistrate of highly relevant information that tends to undermine Doe's credibility and thus the probable cause determination. We have said that omission of an informant's criminal background and financial motive is not "necessarily essential to the probable cause determination," but that was in the context of a detailed affidavit that had been extensively corroborated. *United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006). To the extent that police have a limited privilege

to withhold some information to protect an informant's identity, see *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996); *United States v. Bourbon*, 819 F.2d 856, 859 (8th Cir. 1987), that privilege does not extend to wholesale omission of damaging credibility information. When an affidavit presents a close question as to probable cause under the primary factor analysis, cf. *Dismuke*, 593 F.3d at 587, any available credibility information is likely to be material to the magistrate's decision.

Because the officer's affidavit omitted all credibility information in this case, the magistrate had no meaningful opportunity to exercise his or her discretion to draw favorable or unfavorable inferences. See *Gates*, 462 U.S. at 240. The magistrate might have inferred, based on Doe's past work as an informant, that he was reliable despite his criminal record, past deception of the police, and financial motives. Yet the omitted information could also easily have supported inferences against probable cause, and the issuing magistrate had no indication that such information existed. "The warrant requirement puts primary responsibility on the magistrate to determine probable cause, and if the affiants repeatedly provide the minimum of information, magistrates would be acting within their discretion to demand more." *United States v. Moore*, 661 F.3d 309, 314 (6th Cir. 2011). In this case, however, the affidavit did not provide the magistrate with even a minimum of information on credibility that might have triggered further inquiry. We cannot defer to the under-informed finding of probable cause.

Where information about credibility is not available, other factors such as extensive corroboration may overcome the doubt inherent in relying on an informant without a track

record. See *Koerth*, 312 F.3d at 867–68 (finding that an affidavit with "mere conclusions and assertions of wrongdoing" from an informant of unknown reliability was insufficient, but noting that an untested informant's tip "may in certain instances serve to establish probable cause"). And even where some credibility information is omitted, a strong showing on the primary factors can salvage the warrant. See *Taylor*, 471 F.3d at 840. In this case, however, the issuing magistrate should not have been forced to rely on other factors because vital credibility information was omitted from the affidavit. The probable cause affidavit here left the magistrate unable to fulfill his role as a neutral arbiter and therefore provided an insufficient basis for finding probable cause to support the search warrant.

### C.  *Good Faith Exception*

The good faith exception prevents operation of the exclusionary rule if the police officer's reliance on a search warrant was objectively reasonable. *United States v. Leon*, 468 U.S. 897, 922–23 (1984). When an officer acts within the scope of a search warrant, "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id*. at 921. *Leon* identified four situations in which the good faith exception does not apply: when the affiant misleads the magistrate with a reckless or knowing disregard for the truth, when the magistrate wholly abandons the judicial role, when the affidavit is "bare bones" or "so lacking in indicia of probable cause" that reliance is unreasonable, and when the warrant is facially deficient in that it fails to specify the place to search or the items to seize. *Id*. at 923.

Glover argues that the good faith exception should not apply because (1) the affidavit was so "bare bones" that reliance on the warrant was unreasonable, and (2) the officer acted with reckless disregard for the truth by omitting from the affidavit important information about the informant's credibility. We disagree with the first point but find that Glover is entitled to a hearing on the second.

### 1. *Facial Sufficiency*

First, the probable cause determination in this case was undermined by the withholding of credibility information, but the affidavit was not otherwise lacking in factual detail to the point that reliance was unreasonable. A defendant establishes unreasonable reliance if "courts have clearly held that a materially similar affidavit previously failed to establish probable cause" or the affidavit is "plainly deficient." *United States v. Woolsey*, 535 F.3d 540, 548 (7th Cir. 2008) (applying good faith exception), quoting *Koerth*, 312 F.3d at 869. In *Owens v. United States*, 387 F.3d 607 (7th Cir. 2004), we examined a residential search warrant supported by an affidavit that alleged only that an unknown quantity of cocaine had been sold at the residence one time some three months before, with no indication of the amount sold or the reliability of the informant. *Id*. at 608. We held that the affidavit was "so inadequate" that the good faith exception did not apply. *Id*. (granting habeas corpus relief under 28 U.S.C. § 2255 based on ineffective assistance of trial counsel on a failed motion to suppress). While a complete lack of information on the informant's reliability is also an issue in this case, the remainder of the affidavit here is not as deficient as the affidavit in *Owens*. And given the close similarity of the affidavit here to the affidavit held sufficient in *Dismuke*, see 593 F.3d

at 587, a reasonable officer acting in the wake of that decision could not be expected to know that the warrant here was not supported by probable cause.

Glover argues that the officer's affidavit here is comparable to the deficient affidavits in *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996), and *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993). In *Wilhelm*, the affidavit resulted from an anonymous tip and provided no detail beyond stating that the informant had provided various descriptions of marijuana "consistent with the applicant['s] knowledge." 80 F.3d at 118. Here, the officer's affidavit provided some factual detail rather than merely asserting conduct supposedly in conformity with criminal activity, and it resulted from an in-person informant who appeared before the issuing judge. The *Leake* decision is less relevant—the good faith exception did not apply because the officer failed to corroborate an anonymous tip in a meaningful way, but the court rejected Leake's argument that the affidavit was "bare bones." 998 F.2d at 1367.

### 2.  *Deliberate or Reckless Disregard of Truth*

Glover's second argument is more persuasive. The government's response to Glover's motion to suppress revealed Doe's history as an informant, his multiple convictions, his prior gang affiliation, his use of aliases, and his interest in being paid for useful information. Glover renewed his request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether the officer acted with reckless disregard for the truth by omitting the credibility information from the probable cause affidavit. To obtain a *Franks* hearing, the defendant must make a "substantial preliminary showing" of (1) a material falsity or omission that

would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth. See *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013). This is a burden of production. Proof by a preponderance of the evidence is not required until the *Franks* hearing itself. *Id.* at 509.

In this case, the omitted credibility information was clearly material for the reasons laid out above. Its omission undermined the issuing magistrate's role in the probable cause determination. Only the inquiry into the officer's state of mind remains. To meet his burden on that element, the defendant must offer direct evidence of the affiant's state of mind or circumstantial evidence that the affiant had a subjective intent to deceive based on the nature of the omissions. See *United States v. McNeese*, 901 F.2d 585, 594 (7th Cir. 1990), overruled on other grounds, as recognized by *United States v. Westmoreland*, 240 F.3d 618, 632–33 (7th Cir. 2001); *United States v. A Residence Located at 218 Third Street*, 805 F.2d 256, 258 (7th Cir. 1986).

In denying Glover's request for a *Franks* hearing, the district court made two errors. It found "no evidence that Officer Brown recklessly omitted any information he believed was material to the question of probable cause." *United States v. Glover*, 2013 WL 788081, at *4 (N.D. Ill. Mar. 1, 2013). The district court also noted a lack of evidence that the officer even prepared the affidavit—"in our experience it is the assistant state's attorney who prepares the affidavit, not the police officer." *Id.*

The district court did not show that it considered whether the credibility omissions themselves, even in the absence of more direct evidence of the officer's state of mind, provide

sufficient circumstantial evidence to support a reasonable and thus permissible inference of reckless disregard for the truth. We hold that they do. Although we credit the officer for having Doe appear at the probable cause hearing, that fact does not undermine the inference of recklessness arising from the withheld information. To hold otherwise would place a substantial burden on magistrates to double-check the availability or lack of all relevant information every time an informant appears. An officer's omission from the probable cause affidavit of known and substantial adverse information about the informant's credibility is sufficient to support a reasonable inference of recklessness, requiring that Glover's request for a *Franks* hearing be granted.

The district court's observation that the officer may not have actually prepared the affidavit also put an improper burden on Glover, for two reasons. First, the identity of the preparer does not change the good faith analysis in this case. No matter who drafted the affidavit, the officer signed it under oath. He is responsible for its contents, and a misrepresentation made by one government agent (as opposed to a non-governmental informant) is not cleansed by another government agent's sworn signature on the affidavit. See *United States v. McAllister*, 18 F.3d 1412, 1417 (7th Cir. 1994). The same reasoning applies to a deceptive omission.

Second, to obtain a *Franks* hearing, the defendant need not overcome the court's speculation regarding an innocent explanation for the falsity or omission. While reasonable explanations for the omission of the information might well exist, the defendant need not disprove them before the *Franks* hearing itself. See *McMurtrey*, 704 F.3d at 509. If a defendant falls short of the showing required for a *Franks* hear-

ing, the district court has discretion to hold a "pre-*Franks* hearing" for the defendant to supplement his submissions. The government's explanation of discrepancies raised by the defense must wait for the *Franks* hearing itself, however, where the defendant has the opportunity for full cross-examination. *Id*. The district court erred here by offering its own explanation for the omissions and relying on that explanation to deny a *Franks* hearing.

The government argues that the good faith exception should apply here based on *United States v. Taylor*, 471 F.3d 832 (7th Cir. 2006), and *United States v. Williams*, 718 F.3d 644 (7th Cir. 2013). In *Taylor*, the attesting officer described the informant as a "concerned citizen" and referred to his assistance in past investigations, but the officer omitted the informant's criminal background and receipt of cash payments. 471 F.3d at 840. The district court found that the officer did not intend to mislead the issuing judge, and we affirmed. *Id*. at 836, 840. In *Williams*, we affirmed a finding that a police officer did not recklessly deceive the warrant-issuing judge when he described the informant's recent criminal activity but did not mention that he was under arrest when he provided the information. 718 F.3d at 653.

We agree that Officer Brown's omission of information about Doe's credibility was similar to the omissions of information in both *Taylor* and *Williams*. But both cases are readily distinguishable from Glover's case because the findings in both cases were made *after* the *Franks* hearings, which were needed because the defendants came forward with evidence sufficient to permit an inference of deliberate or reckless omission. See *Williams*, 718 F.3d at 653; *Taylor*, 471 F.3d at 836. The findings in those cases received deference because

the district courts properly held the required *Franks* hearings.

Finally, the government argues that the officer might have omitted the information to protect Doe's identity. Such an explanation may be offered at a *Franks* hearing, but the mere assertion of that rationale is not enough to avoid the hearing. See *McMurtrey*, 704 F.3d at 509. The government later provided the information about Doe to Glover in its response to his motion to suppress in the trial court. This later disclosure tends to suggest that withholding the information was not necessary to protect Doe's identity, or perhaps that the other details in the affidavit had already been sufficient to identify him. But these are matters to be tested in a *Franks* hearing based on evidence, not resolved on appeal by our speculation.

On remand the government may provide a satisfactory explanation for the omission of the damaging information about the informant's credibility, but Glover is entitled to test its explanation. We therefore REVERSE the denial of defendant's motion to suppress and REMAND for a *Franks* hearing.