2022 IL App (1st) 181664-U

No. 1-18-1664

Order filed November 16, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 18817 |
| | ) | |
| ANDRE GREEN, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's convictions for unlawful use or possession of a weapon by a felon over his contentions that the court erred in denying his motions for (1) a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) and (2) a mistrial.

¶ 2    Following a jury trial, defendant Andre Green was found guilty of six counts of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2014)) and sentenced to a total of 14 years' imprisonment. The weapons and ammunition had been recovered following execution of a search warrant. On appeal, defendant contends the trial court erred by (1)

denying his motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), challenging the complaint for the search warrant and (2) denying his motion for a mistrial where a State's witness referred to defendant as the "target" of the search warrant. We affirm.

¶ 3    On February 23, 2018, defendant was found guilty of six counts of UUWF predicated upon possessing firearms (counts I-III), and ammunition (counts IV-VI) recovered by police on October 28, 2015, following execution of a search warrant.

¶ 4    The circuit court had issued the search warrant on October 27, 2015. On that day, Chicago police officer Daniel Conway appeared before the issuing judge and presented "John Doe" and a complaint for a search warrant for defendant, also known as "Dre," and the first floor of a two-flat building on the 11000 block of South Lowe Avenue (Lowe address). Conway requested seizure of firearms, ammunition, and proof of residency documents which, based on information from Doe, he had probable cause to believe were located on the premises or defendant's person. Conway, as the complainant, signed and swore to the complaint before the judge, as did Doe using his "J. Doe" alias.

¶ 5    In the complaint, Conway averred that Doe informed him that, in the previous 48 hours, Doe visited an individual named "Dre" in a first-floor apartment at the Lowe address, a grey two-flat building. In the living room, Dre showed Doe several firearms, including a .45-caliber semiautomatic handgun, which Doe knew was real due to its weight and his familiarity with similar firearms. Doe also observed two rifles "standing up in the corner behind a couch in the living room." Doe knew "Dre" for approximately 15 years and visited him at the Lowe address on multiple occasions during the past month.

¶ 6    Following a database search, police officers and agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) identified defendant as "Dre" residing at the Lowe address. Doe

identified defendant as "Dre" from a photograph shown him by Conway and ATF agents. A criminal history check for defendant revealed a felony conviction for aggravated possession of a stolen motor vehicle.

¶ 7    On October 27, 2015, police took Doe to the Lowe address and Doe identified the building where he observed the firearms. Police and ATF agents observed the building was a grey two-flat building. Doe appeared before the judge for questioning and swore to the contents of the complaint. Doe's criminal history, "including possible pending investigations if any," was presented to the judge, who signed the search warrant at 6:42 p.m. that day.

¶ 8    Prior to trial, on October 4, 2016, defendant filed a motion for a *Franks* hearing. In the motion, defendant argued that "a false statement or statements were knowingly and intentionally, or with reckless disregard for the truth, included in the sworn Complaint/Affidavit," and were necessary for the finding of probable cause. Specifically, defendant challenged the statements that Doe was inside the Lowe address within 48 hours of the swearing of the complaint and issuance of the search warrant on October 27, 2015, and was taken to identify the building on that date.

¶ 9    Defendant alleged that the only individual "who could possibly" be Doe was a man named Charles Davis Jr. Defendant claimed that Davis was the only person who entered the Lowe address in the 10 days prior to execution of the search warrant on October 28, 2015, aside from defendant, defendant's wife Cerita Cole, and her minor son. Davis's last entry was "sometime right before October 18, 2015."

¶ 10    According to defendant, Chicago police records confirmed that Davis was arrested on October 19, 2015, booked into the Cook County Department of Corrections (CCDOC) on October 20, 2015, and released on November 17, 2015. Davis's only "exits" from CCDOC were for court appearances on November 9 and 17, 2015. Defendant posited that Doe, *i.e.*, Davis, therefore could

not have been inside the Lowe address within 48 hours of the issuance of the search warrant on October 28, 2015, and thus the assertions in the complaint were false, and knowingly, intentionally, or recklessly made.

¶ 11     Defendant attached his affidavit, the complaint for the search warrant, the search warrant, and records for Davis, including an arrest report, complaint for preliminary examination, booking records and authorized exits from CCDOC, and an order releasing Davis from custody on November 17, 2015.

¶ 12     In his affidavit, defendant averred that the Lowe address belonged to his late father, who passed away on July 17, 2015. Since then, "very few people" were allowed inside because personal property belonging to defendant's father and late aunt was still present. Defendant's aunt, a Chicago police officer, kept her firearm cleaning kit and police badges there.

¶ 13     In the 10 days prior to the execution of the search warrant, the only people to enter the building were defendant, his wife Cole, her seven-year-old son, and Davis. Defendant had known Davis since 1997 and knew he was arrested on October 19, 2015. Defendant's attorney showed him Davis's records, so he knew that Davis was booked into CCDOC on October 20, 2015, and was not released from custody until November 17, 2015.

¶ 14     On April 10, 2017, defendant filed an amended *Franks* motion, which was substantially the same as the initial motion, but additionally requested that the identity of the informant be disclosed to the defense or *in camera* to the court. Defendant attached his updated affidavit, as well as the same documents supporting the original motion.

¶ 15     On May 15, 2017, the State filed a motion to strike or deny defendant's *Franks* motion, arguing that it omitted allegations of deliberate falsehood or reckless disregard for the truth by the

police as opposed to the "nongovernmental informant." Defendant filed a reply brief arguing that he alleged falsehoods by officers and the informant.

¶ 16 On July 14, 2017, the court heard arguments from the parties. Defendant argued that the complaint contained allegations known to be false or with reckless disregard for the truth, including that, within 48 hours of the issuance of the search warrant, Doe had been at the Lowe address and was taken there again by police. According to defendant, Davis, the only possible informant, was in custody during the relevant period of time.

¶ 17 The State contended that defendant was "on a fishing expedition" to discover the identity of Doe, and did not expressly allege that the police officers knew that the information contained in the search warrant was false or displayed reckless disregard for the truth. Additionally, Doe appeared before a judge, who had the opportunity to question Doe about the veracity of the complaint before issuing the warrant.

¶ 18 The court stated that defendant was engaged in "spear fishing" regarding the identity of the informant. Defendant's affidavit was the only evidence regarding the identity of Doe, and thus amounted to a "mere denial" of the facts in the complaint. Additionally, defendant had not presented evidence that the police officers knew that the information in the complaint was false or included that information with a reckless disregard for the truth. The court continued the matter so that defendant could obtain an affidavit from defendant's wife or other additional material in support of his motion.

¶ 19 On September 18, 2017, defendant filed a memorandum of law in support of his amended motion for a *Franks* hearing. Defendant relied upon *United States v. Glover*, 755 F. 3d 811 (7th Cir. 2014), to argue that a *Franks* hearing was necessary. According to defendant, the sworn complaint supporting the warrant contained no information regarding the credibility of Doe, except

for the notation that Doe's "criminal history including possible pending investigations if any has been presented and made available" to the court.

¶ 20    On November 9, 2017, the court reopened argument on defendant's motion. Defendant argued that, under *Glover*, which was factually similar, he was entitled to a *Franks* hearing because the sworn complaint supporting the search warrant lacked information regarding Doe's credibility. The State contended that the court should stand by its previous ruling because defendant's affidavit merely denied the facts in the complaint, and *Glover* was nonprecedential and distinguishable.[1]

¶ 21    The court denied defendant's motion, finding that defendant's theory that only one person was in the building within 10 days of the warrant's execution relied solely upon his own affidavit, and defendant did not show that the officer who presented the sworn complaint for the search warrant lied or acted with a reckless disregard for the truth. The court commented that it was not bound by *Glover*, which also was distinguishable on the facts.

¶ 22    At trial, Chicago police detective Thomas Beebe testified that on October 28, 2015, he worked with an ATF task force in executing a search warrant at the Lowe address. When Beebe arrived, he observed defendant, whom he identified in court, on the front porch with Cole and other officers. Inside the residence, Beebe recovered a bag containing shotgun shells of various sizes and .45-caliber bullets, a loaded 20-gauge shotgun, a loaded semiautomatic .45-caliber pistol, more shotgun shells, a men's leather jacket containing a loaded .45-caliber magazine in the pocket, and a loaded 12-gauge shotgun. Beebe also observed an unopened envelope from a healthcare provider

---

[1] The State also made a proffer that the informant was someone other than Charles Davis Jr. and Officer Conway remembered presenting the informant's criminal history to the judge and the judge questioning Doe about the facts alleged in the warrant. Defendant objected. The court did not consider the proffer in ruling on defendant's motion.

addressed to defendant, a photocopy of defendant's driver's license, and defendant's Social Security card.

¶ 23    At trial, Beebe identified the firearms and ammunition, which he testified showed no signs of deterioration or age, and documents recovered from the residence. Beebe also identified photographs and narrated a video showing the interior of the address, taken on the day of the search.[2] On cross-examination, Beebe stated that he knew that officers detained defendant as they observed him exit from the door that led to the second floor unit. Beebe observed women's items in the first floor premises and did not take any of the men's clothes from that unit. None of the items in the unit were tested for DNA. Beebe did not know the age of the recovered firearms.

¶ 24    Chicago police officer Jeffrey Edwards testified that he helped execute the search warrant on October 28, 2015. Beforehand, Edwards communicated with surveillance officer Larron Alexander. When Edwards walked toward the front of the building, he observed defendant, whom he identified in court, exit from the doorway that led to the second-floor unit. Edwards informed defendant and, later, Cole, that officers were executing a search warrant, and briefly detained them.

¶ 25    Edwards discovered four pieces of proof of residence and a holster, which Beebe recovered. Edwards asked defendant about the second-floor unit. Defendant responded that it was occupied by his father before he passed away. Defendant consented in writing to a search of the second floor. The consent form was entered into evidence. On cross-examination, Edwards stated that Alexander observed defendant before Edwards did.

¶ 26    Alexander testified that he conducted surveillance from a parked vehicle near the residence on October 28, 2015. He observed "defendant, the target of the search warrant, outside with a

_____

[2] None of the exhibits are in the record on appeal.

couple of dogs." The State asked Alexander whether he saw that person in court, and Alexander responded, "I do."

¶ 27    Defendant interjected and the court addressed the attorneys in a sidebar. The following exchange occurred:

"THE COURT: What are you doing?

[THE STATE]: I don't know. I didn't have a lot of time to prep him today prior to testifying. Judge, I'm sorry I did not expect that to come out at all.

* * *

Judge, like I said, is there a way we can admonish the witness—

THE COURT: No, I think admonishment—

[THE STATE]: With my witness just to reaffirm that the word target does not come out any more.

THE COURT: He is on the stand. I don't know how you're going to do that.

* * *

This is what we're going to do. What he said so far is target. You haven't asked him for an in-court identification.

[DEFENSE COUNSEL]: He did say—

THE COURT: Yes, flat out he hasn't connected all those dots yet.

* * *

What I'm saying, he hasn't connected the dots yet who the target was or made an in-court identification. The trouble is if he does finish that, I think it's pretty obvious."

¶ 28    Proceedings resumed, and the State asked Alexander whether the individual he observed at the residence was in court. Alexander responded affirmatively. Defendant again interjected and the court called another sidebar, where the following colloquy occurred:

"THE COURT: I told you not to bring out his identification. You just did it.

[THE STATE]: Judge, I'm sorry.

THE COURT: I told you not to do it because he has not connected the dots.

[DEFENSE COUNSEL]: I'm going to speak with [defendant]. And I have a motion to make after I speak with [defendant], but I need to consult him before I make this motion.

THE COURT: I understand.

[THE STATE]: Judge, I'm sorry. I didn't understand. I thought I was able to ask him if he saw the defendant out front and go into this residence. That's the whole reason I'm calling him.

THE COURT: I understand. The problem is now that you've identified this target, we heard other testimony about this dog, all that stuff. I'm saying the connection is here. You've done it. You've connected the dots. I'm going to let you finish with this witness. You can go ahead. My only issue, my problem, as I told you before, is without in-court identification, the loop was not made. It may be now.

\*\*\*

[THE STATE]: I didn't understand. I just figured I would not ask him any questions at that point that he would ever say the word target again. I did not realize, and I wouldn't have done it, that I was not able to make an in-court identification of the defendant. That's the reason I'm calling him.

THE COURT: The only person we heard out there—actually, I take that back, two people we've heard in this trial is the defendant and his girlfriend. So that's it. And we've heard the testimony about these dogs and stuff like that. The reason I was telling

you to not make an in-court identification is because you have potential of closing that loop and connecting all those dots for the jury to figure out who this target it.

* * *

I will let you finish. You will get the in-court identification. You will finish this witness."

¶ 29 Alexander then identified defendant, in court, as the person he saw that day standing with dogs. Defendant entered the building using a door that led to the first-floor residence and, later, exited the building from a door that led to the second-floor residence. Afterward, the search warrant was executed.

¶ 30 Out of the presence of the jury, defense counsel moved for a mistrial. He argued that Alexander's testimony identifying defendant as the "target" of the search warrant was "too prejudicial" and could not be cured by a jury instruction, which would only "highlight" the testimony. The State argued that the court should admonish the jury to disregard Alexander's use of the word "target," and instruct Alexander not to repeat the word in his testimony.

¶ 31 The court denied the motion, noting that Alexander identified defendant as the target only once. The court agreed with the State that "target" is a term of art, and Alexander's testimony did not completely prejudice defendant and deprive him of a fair trial. The court agreed with the defense that a curative instruction would only highlight the issue. Before trial resumed, the court admonished Alexander not to use the term again in his testimony.

¶ 32 During cross-examination, Alexander did not refer to the content of the search warrant.

¶ 33 The State entered a certified record from the Illinois Secretary of State and a vehicle title reflecting that defendant purchased a vehicle in December 2015 and registered it in his name at the Lowe address.

¶ 34    The State then introduced four stipulations. Fingerprint specialist Charles Kubilus would testify that he examined the firearms and discovered no latent fingerprint ridges usable for comparison. ATF firearm and tool mark examiner Kristin Gerber would testify that she examined the firearms and determined they were in normal operating condition. The parties further stipulated that the .45-caliber handgun was shipped from Colt on December 8, 1917, the 20-gauge shotgun was manufactured sometime after 1962, and the 12-gauge shotgun was manufactured after 1972. Lastly, the parties stipulated that defendant had been convicted of a felony.

¶ 35    Defendant testified that his father lived downstairs in the first floor unit at the Lowe address and passed away on July 17, 2015. Defendant resided there intermittently, most recently for two to three weeks in 2014. Defendant then moved "[d]own the street" to the home of his girlfriend, Tracy Johnson, through the date of the search. During that time, defendant renovated the upstairs of the Lowe address and his "ex-wife," Cole, lived in the first-floor apartment with her son. Defendant and Cole divorced in 2009. Defendant's father's possessions were "all over the whole building." Defendant's late aunt was a Chicago police officer, and her bag containing a firearm cleaning kit was "[u]pstairs in the kitchen" on the date of the search. That day, defendant was "finishing the bathroom" of the second-floor unit.

¶ 36    On cross-examination, defendant stated that only Cole and her son lived at the Lowe address at the time of the search. Defendant agreed that he previously averred that he entered the building during October 2015 with Cole, to whom he was married at the time he executed the affidavit, and her son. When the State asked defendant about his relationship with Cole, defendant denied that Cole was his wife when he prepared the affidavit for the motion for a *Franks* hearing, and stated that he lived with Johnson during that time. Defendant only went to the Lowe address two to three times per week, and never entered the first-floor apartment. He identified documents

showing his residence as the Lowe address, but stated he was living elsewhere. The dogs in the residence belonged to Cole's friends. Defendant did not know whose firearms were confiscated pursuant to the search.

¶ 37    The jury found defendant guilty of six counts of UUWF.

¶ 38    Defendant filed a motion and amended motion for a new trial, arguing in relevant part that the court erred in denying his *Franks* motion and his motion for a mistrial.

¶ 39    The court denied the motion for a new trial, commenting that it gave defendant ample opportunity to explore the issues raised in his *Franks* motion and that his trial testimony "kind of undercuts" statements in his affidavit supporting his *Franks* motion. Additionally, the court concluded that it did not err in denying defendant's motion for a mistrial. Alexander's reference to defendant as the "target" of the search warrant was "relatively fleeting" and not understood by the jury, so defendant was not prejudiced.

¶ 40    After a hearing, the court sentenced defendant to terms of 14 years' imprisonment on counts I-III and 6 years' imprisonment on counts IV-VI, all to be served concurrently. The court denied defendant's motion to reconsider sentence.

¶ 41    On appeal, defendant first argues that the trial court erred by denying his motion for a *Franks* hearing where he made the requisite substantial preliminary showing that the complaint for a search warrant contained false information and omitted information that was "relevant and critical" to assessing the credibility and reliability of Doe.

¶ 42    *Franks* provides a defendant the right, under limited circumstances, to a hearing to challenge the veracity of an affidavit supporting a search warrant. *People v. Voss*, 2014 IL App (1st) 122014, ¶ 16. Under *Franks*, where the defendant makes a substantial preliminary showing that the affiant-officer for the warrant affidavit made a false statement knowingly and intentionally,

or with reckless disregard for the truth, and the allegedly false statement was necessary to the finding of probable cause, a court must hold a hearing. *People v. Chambers*, 2016 IL 117911, ¶ 35 (citing *Franks*, 438 U.S. at 155-56). A defendant's preliminary burden must be sufficiently rigorous to preclude automatic hearings in every case, but not so onerous as to be unachievable. *People v. Lucente*, 116 Ill 2d 133, 152 (1987). Thus, a substantial preliminary showing is proof somewhere between mere denials and proof by a preponderance of the evidence. *Chambers*, 2016 IL 117911, ¶ 41; *Lucente*, 116 Ill. 2d at 152.

¶ 43    The focus of the inquiry is the statements made in the affidavit, here the sworn complaint, by the affiant-officer. *Chambers*, 2016 IL 117911, ¶ 36; *Lucente*, 116 Ill 2d at 149. However, "if an informant is the source of false statements, a defendant may still be entitled to a hearing to show that the officer acted recklessly in using the information received as a basis for the search warrant." *Lucente*, 116 Ill 2d at 152. Affidavits supporting a search warrant are presumed valid. *Chambers*, 2016 IL 117911, ¶ 35. "Thus, the 'challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.' " *Id.* (quoting *Franks*, 438 U.S. at 171). This court reviews *de novo* the denial of a defendant's motion for a *Franks* hearing. *Id.* ¶ 79.

¶ 44 This court has identified 10 non-exhaustive factors that a court may consider in reviewing the trial court's decision:

"(1) whether defendant's motion is supported by affidavits from interested parties or disinterested third persons;

(2) whether defendant has available any objective evidence to corroborate the affidavits such as records of hours worked or receipts for travel or other activities;

(3) whether the information in the affidavits, accepted as true, renders it impossible for the confidential informant's testimony to be true;

(4) whether the matters asserted by defendant are in the nature of an alibi or a general denial that he engaged in the conduct giving rise to probable cause;

(5) whether the information supporting probable cause is the result of a police investigation or information supplied by an informant or other confidential source;

(6) if probable cause is based on information from a confidential source, whether the warrant affiant took steps to corroborate that information;

(7) the facial plausibility of the information provided by the confidential source;

(8) whether the affiant had any prior experience with the confidential source that would enhance the source's reliability;

(9) whether there exist any circumstances that should counsel against believing the information provided by the confidential source; and

(10) whether the confidential source appeared before the issuing magistrate who had the opportunity to examine the source and assess his or her credibility." (Citations omitted.) *Voss*, 2014 IL App (1st) 122014, ¶ 22 (compiling cases).

¶ 45    In this case, the trial court did not abuse its discretion in denying defendant's motion for a *Franks* hearing.

¶ 46    The only affidavits defendant attached in support of his motion were his own self-serving, uncorroborated affidavits, averring that in the 10 days prior to the execution of the search warrant, the only person who entered the Lowe address other than defendant, Cole, and Cole's minor son was Davis, whom defendant knew was arrested on October 19, 2015. Although CCDOC records

attached to the motion showed Davis was in custody during the relevant time period in October 2015, they did not demonstrate that Davis was, in fact, Doe. See *id.* ¶ 24 (where the defendant did not provide any objective evidence to corroborate the affidavits from interested parties, the court did not abuse its discretion in denying the motion for a *Franks* hearing).

¶ 47    Further, defendant did not allege facts showing that Conway knowingly, intentionally, or recklessly made a false statement in his sworn complaint supporting the arrest warrant. See *People v. Creal*, 391 Ill. App. 3d 937, 944 (2009) (finding the affidavits from interested parties did not establish that the police officer intentionally lied or exhibited a reckless disregard for the truth in the warrant complaint regarding the informant's statements, and thus did not support defendant's motion for a *Franks* hearing). Defendant's affidavits were, in essence, uncorroborated denials of Doe's statements that he was in the Lowe residence multiple times in late October 2015 and, on one of those occasions, defendant showed him weapons.

¶ 48    Nor did defendant make any showing that Conway recklessly disregarded the truth by relying on Doe's statements. Doe's account to Conway was not facially implausible. Moreover, Conway took steps to corroborate Doe's statements before presenting Doe to the court in support of the search warrant. Police and ATF agents used computer databases to confirm that a "Dre" lived at the Lowe address as Doe claimed. Conway and ATF agents identified defendant as Dre and then showed defendant's photo to Doe, who identified it as depicting Dre, the man who showed him the firearms. Police also took Doe to the Lowe address, where he identified the building where Dre showed him the firearms. Police and ATF agents confirmed the gray two-flat building matched the earlier description Doe provided. Lastly, Conway presented Doe to the issuing judge who had the opportunity to examine him and access his credibility, and Doe swore to the complaint before the judge. See *Creal*, 391 Ill. App. 3d at 944 (finding relevant that the informant personally

appeared before the circuit judge and signed an affidavit swearing to the truth of the complaint). In sum, under the *Voss* factors, defendant's motion, affidavits, and supporting documents do not establish the substantial preliminary showing required for a *Franks* hearing.

¶ 49    Defendant also contends that, pursuant to *Glover*, a *Franks* hearing was warranted because the sworn complaint in support of the search warrant omitted information regarding the informant's credibility.

¶ 50    Although *Glover* is nonbinding upon this court, we find it instructive; however, it is distinguishable. See *Werderman v. Liberty Ventures, LLC*, 368 Ill. App. 3d 78, 84 (2006) (state courts are not bound to follow decisions of the federal district courts or circuit courts of appeal). Although nonbinding, federal decisions can be considered persuasive authority and followed if the state court believes the federal analysis is reasonable and logical. *Id.*

¶ 51    In *Glover*, the Seventh Circuit found that the police officer's affidavit supporting a search warrant lacked any information about the informant's credibility, which was "insurmountable" and "undermine[d] the deference [the reviewing court] would otherwise give the decision of the magistrate to issue the search warrant." 755 F. 3d at 816. The informant, "Doe," had been an informant for the Chicago police for six years and had received payment for providing information to the police. *Id.* at 815. He had been affiliated with a gang, used aliases when questioned by police, and had fourteen criminal convictions, four for crimes committed while he was working as an informant. *Id.* Doe appeared before a magistrate in support of the search warrant, but none of this background information was included in the officer's affidavit supporting the warrant. *Id.*

¶ 52    The Seventh Circuit found "the complete omission of known, highly relevant, and damaging information about Doe's credibility—his criminal record, especially while serving as an informant; his gang activity; his prior use of aliases to deceive police; and his expectation of

payment *** impaired the neutral role of the magistrate deciding whether to issue the warrant." *Id.* at 817. The omission of the informant's criminal background and financial motive created no meaningful opportunity for the magistrate to exercise discretion to draw inferences about the informant. *Id.* at 817-18.

¶ 53 Unlike in *Glover*, the sworn complaint supporting the search warrant here did not omit information regarding informant Doe's credibility. Rather, Conway averred in the complaint that Doe's criminal history, "including possible pending investigations if any," had been presented to the judge. Conway's affidavit is presumed valid (*Chambers*, 2016 IL 117911, ¶ 35) and defendant made no showing that Conway did not in fact present Doe's criminal history to the judge. Thus, unlike the magistrate in *Glover*, the court here had a meaningful opportunity to both question Doe about his criminal history when he appeared before the court and to exercise discretion to draw inferences about his credibility from that criminal history. Further, unlike the defendant in *Glover*, defendant here made no showing Conway knew of any damaging information regarding Doe's credibility and withheld it from the judge. Thus, the circuit court did not abuse its discretion in denying defendant's motion for a *Franks* hearing on the basis of *Glover*.

¶ 54 Next, defendant contends that the trial court abused its discretion when it denied his motion for a mistrial where State's witness Officer Alexander prejudicially referred to defendant as the "target" of the search warrant, and the prejudice was compounded when the State elicited Alexander's in-court identification of defendant.

¶ 55 A trial court should grant a motion for mistrial if "an error of such gravity" occurred during the proceedings that it "infected the fundamental fairness of the trial, such that continuation of the proceeding would defeat the ends of justice." *People v. Bishop*, 218 Ill. 2d 232, 251 (2006). "Our standard of review for motions for mistrial is whether the trial court abused its discretion; a court's

decision will not be disturbed unless defendant was prejudiced by the testimony." *People v. McDonald*, 322 Ill. App. 3d 244, 250 (2001). An abuse of discretion exists where "the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Caffey*, 205 Ill. 2d 52, 89 (2001).

¶ 56    The existence of a search warrant can be properly admitted for the limited purpose of explaining the conduct of police officers during an investigation. *People v. Virgin*, 302 Ill. App. 3d 438, 445 (1998); *People v. Janis*, 240 Ill. App. 3d 805, 811 (1992). However, the introduction of the contents of a search warrant may prejudice a defendant where the evidence is inadmissible hearsay, improperly bolsters the credibility of a witness as a prior consistent statement, or is argued by the State as evidence of guilt. *Janis*, 240 Ill. App. 3d at 811.

¶ 57    Defendant does not contend that Alexander's identification of defendant as the "target" of the search warrant was inadmissible hearsay. Rather, he contends that Alexander's description of defendant as the "target" of the search warrant, in conjunction with his in-court identification of defendant, "indicated to the jury that the police knew well before they went and secured the search warrant that the defendant unlawfully possessed the firearms and ammunition." He asserts the testimony informed the jury "that a judge approved a search warrant that was focused on the defendant," which "raise[d] in their minds the question of whether they could possibly rule inconsistently with a judicial officer, were they to acquit the defendant."

¶ 58    The record, however, does not support defendant's contentions. First, neither party filed a motion *in limine* to preclude any mention of the search warrant or description of defendant as the "target" of the search warrant. See *People v. Rivera*, 182 Ill. App. 3d 33, 38 (1989) (finding the trial court properly denied the defendant's motion *in limine* to bar testimony that police had a search warrant authorizing the search of premises and defendant's person as the evidence was

properly admitted for the limited purpose of explaining the conduct of the police officers). Second, as the circuit court noted, Alexander's single reference to defendant as the "target" of the search warrant was fleeting. See *People v. Canet*, 218 Ill. App. 3d 855, 861 (1991) (finding no error where references to a search warrant were "so crucially intertwined" with the arrest to form a chain of relevant circumstances and the testimony concerned the formal procedure of police officers in executing the search warrant before they could perform a search of the defendant and an apartment). Third, the State did not make any reference to Alexander's identification of defendant as the target of the search warrant before the jury. It neither attempted to use the testimony as a prior consistent statement to bolster the credibility of a witness nor argued it as evidence of defendant's guilt. Thus, under the *Janis* factors, defendant suffered no prejudice from Alexander's testimony.

¶ 59    Lastly, even if Alexander's testimony was improper, the prompt sustaining of an objection, combined with a limiting instruction to the jury, is often sufficient to cure an evidentiary error. See *People v. Risper*, 2015 IL App (1st) 130993, ¶ 46. Here, the court promptly addressed defendant's objections to the testimony, ordering the State to make sure Alexander did not again refer to defendant as the target of the search warrant and did not identify defendant as such in court. Further, defendant rejected a curative instruction to the jury to disregard Alexander's use of the word "target" because he contended it would only have highlighted the alleged error. See *People v. Montes*, 2020 IL App (2d) 180565, ¶  45 ("Under the invited error doctrine, a defendant cannot complain of error that he or she induced the trial court to make, or to which he or she consented.").

¶ 60    In sum, even if Alexander's minimal reference to defendant as the target of the search warrant was error, the alleged error was not of such gravity that it "infected the fundamental fairness of the trial, such that the continuation of the proceeding would defeat the ends of justice."

*Bishop*, 218 Ill. 2d at 251. Thus, the court did not abuse its discretion in denying defendant's motion for a mistrial.

¶ 61    Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 62    Affirmed.